Clark v. Mo. Pac. Rly. Co.

35 350
37 748
39 540
35 350
43 759
35 350
44 279
44 591
35 350
50 22
35 350
55 659
35 350
60 215
35 350
66 748
35 350
78 283

JAMES B. CLARK v. THE MISSOURI PACIFIC RAILWAY COMPANY.

1. RAILROAD WHISTLE—*Failure to Sound; When Negligence, When Not.* Where a railway company fails to sound the whistle of one of its moving engines, at least eighty rods distant from the place where the engine is to cross a public road or street outside of a city or village, it is negligence toward persons who may be traveling upon that road or street, but is not negligence toward persons who may be traveling on another road or street within the limits of such city or village. (*Mo. Pac. Rly. Co. v. Pierce*, 33 Kas. 61.)

2. ———— *Duty of Person Crossing Track.* Where a person is about to cross a railway track it is his duty to use his senses, and if he does not, and by reason thereof injury results to him from a moving railway train, he cannot recover from the railway company. (*U. P. Rly. Co. v. Adams*, 33 Kas. 427.)

3. ———— *Questions Discussed.* Questions with regard to submitting special questions to the jury, and their findings thereon, and their general verdict, and the judgment of the court upon the special findings, notwithstanding the general verdict, discussed, and *held*, that no material error was committed by the court.

*Error from Miami District Court.*

ACTION by *Clark* against *The Railway Company*, to recover damages for bodily injuries. Trial at the May Term, 1885, when the jury found for the plaintiff, and assessed his damages at $1. Upon questions presented at the request of plaintiff, the jury answered as follows:

"1. Did the employés of defendant that were operating the train at the time plaintiff received the injuries complained of, blow, or cause to be blown, the whistle on the engine three times, at least 80 rods before crossing the highway on the outside of the city limits of the city of Paola, Miami county, Kansas? A. No.

"2. Did the plaintiff see or know of the approach of the train of defendant in time to have avoided the injury? A. No.

"3. Did the defendant, the Missouri Pacific Railway Company, or any of its employés, blow the whistle three times, at least 80 rods before crossing the highway on the outside limits of the city of Paola, Miami county, Kansas? A. No.

"4. Was the defendant, the Missouri Pacific Railway Company, guilty of negligence which was the immediate cause of the injury to plaintiff?    A. We cannot answer.

"5. (Not given.)

"6. How far is the crossing where the collision occurred, from the place where the highway on the outside limits of Peery's addition to the city of Paola on the east, crosses the railway track of defendant?    A. 28 rods, 11 feet.

"7. Was the plaintiff, Clark, warned that the train was approaching in time to have stopped his team and avoided the collision?    A. We cannot answer.

"8. Did the defendant's employés managing the train at the time the collision occurred, ring or cause to be rung the bell on the engine at any time after reaching the city limits and before colliding with plaintiff's wagon?    A. We cannot answer.

"9. Did the plaintiff, after coming in sight of defendant's track, at any time before arriving at the track, look in the direction from which the train was coming?    A. We cannot answer.

"10. Was plaintiff intoxicated at the time the collision occurred on said 15th day of April, 1882?    A. We cannot answer."

Special findings upon questions presented at the request of the defendant:

"1. Did the plaintiff, when driving on Locust street and approaching the railroad track, look before he drove on the track to see if a train was approaching on the track from the east?    A. We cannot answer.

"2. Did the plaintiff, when traveling along Locust street and near the railroad track, listen to hear if a train of cars was approaching on the road from the east, before he drove on the track?    A. We cannot answer.

"3. Could the plaintiff have discovered the approach of the train on the railroad of the defendant, for the distance of seven hundred feet when he got within one hundred feet of the track, if he had looked in the direction from which the train was coming?    A. We cannot answer.

"4. Could plaintiff have seen the train approaching on the railway for the distance of one-half mile when he was fifty feet from the track?    A. No.

"5. Could the plaintiff have heard the noise of the train

eighty rods before it reached the crossing of Locust street, if he had listened for its approach? A. We cannot answer.

"6. Did the train make a loud noise as it was approaching the crossing on Locust street? A. We cannot answer.

"7. Was the weather clear and calm at the time of the collision between the engine and plaintiff's wagon? A. Yes.

"8. Was there anything to prevent the plaintiff from seeing the train coming on the track before he drove his horses on the railroad, if he had looked in the direction from which it was coming? A. No.

"9. Could plaintiff have seen the train coming on the track a sufficient length of time to have avoided the collision if he had looked in the direction from which the train was coming? A. Yes.

"10. Could plaintiff have heard the noise of the train a sufficient time to have averted the collision if he had listened? A. We cannot answer.

"11. Was the plaintiff guilty of negligence in driving upon the railroad track without either looking or listening for an approaching train? A. We cannot answer.

"12. Did plaintiff exercise ordinary care and prudence in driving his wagon and team on the railroad track? A. We cannot answer.

"13. Did the plaintiff at any time after he got within two hundred feet of the railroad track, and before he drove his wagon upon the track, look to see if a train was approaching on the railroad from the east? A. No."

Upon the special findings, the court rendered judgment for the defendant. The plaintiff brings the case here.

*Stevens & Stevens*, and *Brayman & Sheldon*, for plaintiff in error.

*W. A. Johnson*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.; This was an action brought by James B. Clark against the Missouri Pacific Railway Company, to recover for injuries alleged to have been caused through the negligence of the railway company. The case was tried before the court and a jury, and the jury found a general verdict in favor of the plaintiff and against the defendant; and assessed

the plaintiff's damages at one dollar; and also made a large number of special findings, upon which special findings the court rendered judgment in favor of the defendant and against the plaintiff for costs, notwithstanding the general verdict. Of this judgment the plaintiff complains, and brings the case to this court for review.

It appears that on April 15, 1882, at about 6 o'clock in the afternoon, while the plaintiff was crossing the defendant's railway track, going northward on Locust street, in the city of Paola, Kansas, the hind end of his wagon was struck by one of the defendant's engines, which was attached to and was drawing a westward-bound railway freight train, and that this collision caused the injuries complained of.

There are two principal questions involved in this case: First, was the defendant guilty of any negligence causing the injuries complained of? Second, was the plaintiff guilty of any contributory negligence? Both of these questions we think have already been virtually decided by this court in the cases of *Mo. Pac. Rly. Co. v. Pierce*, 33 Kas. 61; and *U. P. Rly. Co. v. Adams*, 33 id. 427.

The only negligence charged against the railway company in this case is, that it failed to sound the engine whistle three times, at least eighty rods east of a certain point where the railway crosses a public road or street at the east edge of the city of Paola, and claimed to be outside of the city limits. The statute does not require that the whistle shall be sounded in a city or village. (Comp. Laws of 1879, ch. 23, § 60.) But it is claimed that the whistle should have been sounded at least eighty rods east of this road or street, for the reason that it was not within the city limits. This road or street was about four hundred and seventy-three feet east of Locust street and of the place where the accident occurred. Now, assuming that the aforesaid road or street was not in the city, and that the whistle was not sounded at least eighty rods east thereof, still these facts, if they are facts, do not necessarily show negligence on the part of the defendant affecting this case. This exact ques-

1. Railroad whistle, failure to sound— when negligence, when not.

23 — 35 KAS.

tion has already been decided by this court, in the case of *Mo. Pac. Rly. Co. v. Pierce*, first above referred to. The accident in that case happened at the very same place where the accident in this case happened, and in that case it was held as follows:

"The failure of a railroad company to sound the locomotive whistle three times, at least eighty rods from the point where the railroad crosses any public road or street which lies outside of a city or village, is negligence; but such negligence is not attributable to the railway company in a case where the injury complained of was done at a street-crossing within the limits of a city."

Also, in that case, the following language was used in the opinion of the court:

"The purpose of the legislature in requiring this warning to be given before reaching a highway, is manifestly to afford protection to persons or property that may be upon, or passing over such highway, and therefore the omission of the company to comply with this statutory requirement cannot be held to be negligence as to any injury done except at the crossing of the particular highway for which the whistle is required to be sounded. The company owed no duty under this statute to parties crossing Locust street, within the limits of Paola, which is a city of the second class."

We also think that the questions whether, under the facts of this case, the plaintiff was guilty of contributory negligence, and whether such negligence will bar a recovery, have been virtually decided by the case of the *U. P. Rly. Co. v. Adams*, 33 Kas. 427. In that case it was held as follows:

"Where an action is brought to recover for personal injury, and the plaintiff's testimony shows that his own negligence contributed directly to the injury, he has failed to make out a *prima facie* right of recovery, and a demurrer interposed to his evidence should be sustained.

"It is the duty of a person about to cross a railroad track, to make a vigilant use of his senses as far as there is an opportunity, in order to ascertain whether there is a present danger in crossing. A failure to listen, or look, when by taking this precaution the injury might have been avoided, is negligence that will bar a recovery, notwithstanding the negligence of the railroad company in failing to give signals, contributed to the injury."

The plaintiff was well acquainted with the crossing of Locust street by the railway track. He had lived in that county and near that place for twenty-five years. He had crossed the railway track at that place a great many times, crossing sometimes as often as six times a day. Also, there was a sign put up at that crossing, in plain view, with letters on it saying: "Look out for the cars." He, at the time of the accident, was going north. The train which did the injury was coming from the east. The plaintiff, at one time, when he was at a great distance from the railway track, looked toward the east and toward the railway track, but he did not look toward the east nor toward the railway track at any time after he arrived within 200 feet of the track. During the time while he was approaching the railway track he was looking toward the west. We think the case above cited settles the question that the plaintiff in this case was guilty of contributory negligence, and that he cannot recover.

*2. Duty of person crossing track.*

Of course, presumptively, the general verdict of the jury is a finding of everything in favor of the plaintiff and everything against the defendant; but we know from the special findings of the jury that such was not the intention. We would presume from the general verdict alone, that the jury intended to find that the defendant was guilty of negligence; but from the special findings we know that they did not so intend. Specific questions were put to the jury for the purpose of ascertaining whether the defendant was guilty of negligence, or not, and the jury answered in substance that they could not answer; which was in effect an answer that there was no sufficient evidence introduced to prove negligence on the part of the defendant. And this answer is true. There was no such evidence introduced. It is true there was some evidence introduced on the trial tending to show, and the jury found, that no whistle was sounded eighty rods east of a certain highway claimed to be outside of the city limits; but this evidence and finding merely tended to show negligence on the part of the defendant as toward persons traveling on that highway, and not negligence as to-

*3. Questions discussed.*

ward persons traveling on Locust street, in the city of Paola, where this accident occurred. Besides, this finding that the whistle was not sounded, was against the preponderance of the evidence. But taking this finding as it is, still the entire evidence tended to prove and the special findings show that the defendant was not guilty of any negligence as toward the plaintiff in this case. Also, from the general verdict alone, we would presume that the plaintiff was not guilty of any contributory negligence; but the evidence and the special findings of the jury show that he was; hence the special findings and the general verdict are inconsistent with each other, and the special findings must govern. (Civil Code, § 287.) Also, we think the special findings in this respect are sustained by the uncontradicted evidence.

The plaintiff in error also complains that the jury were not required to answer all the special questions of fact presented to them. Now we would think that the court below should have urged the jury more strongly than it did to answer properly all these questions; but still, we cannot say that any material error was committed in this respect as against the plaintiff. The jury failed to answer only four of the questions presented to them at the request of the plaintiff, and upon two of these at least the findings should have been against the plaintiff, and not in his favor; and the other two, under the circumstances of this case, were immaterial. Besides, the court sent the jury out a second time to make findings upon all the questions presented to them. But here the court may have committed a slight error in stating to the jury at that time, among other things, "that if there was any question they could not fairly answer, they might so state." But whatever error the court may have committed in this respect, we do not think that it could have materially prejudiced any of the rights of the plaintiff. It was rather an error against the defendant than against the plaintiff.

We do not think that any material error was committed against the plaintiff, and therefore the judgment of the court below will be affirmed.

All the Justices concurring.