THE ATCHISON, TOPEKA & SANTA FE RAILROAD COM-
PANY v. LOU HOLLAND.

**No. 11053.**

1. RAILROAD—*Injury at Crossing—Duty of Traveler.*  A person who sees a railroad-track upon which trains may pass at any time is already warned of danger, and it is the imperative duty of one about to cross the tracks of a railroad at least to look and listen for approaching trains.  If he fails to look, when by looking he could see a coming train, and there is no excuse for such failure, he will be deemed guilty of negligence *per se*, and not entitled to recover for injuries sustained in a collision with a train, although those in charge of the train failed to give any signals of its approach.

2. ——— *Contributory Negligence at Crossing.*  A person familiar with a railroad-crossing, where she was injured, and who knew a train was due, looked for a train when she was on a road 111 feet away from the crossing, and afterward drove the distance named on a road parallel with the track and upon the crossing without looking for a train, when, if she had looked at any point within 100 feet of the crossing, or when she was about to cross, she could have seen the coming train and averted the injury.  *Held*, that she was guilty of contributory negligence.

Error from Cowley district court ; J. A. BURNETTE, judge.  Opinion filed February 11, 1899.  Reversed.

*A. A. Hurd, W. Littlefield*, and *O. J. Wood*, for plain- tiff in error.

*Madden & Buckman*, for defendant in error.

14—60 KAN.

The opinion of the court was delivered by

JOHNSTON, J. : Lou Holland collided with a loco-
motive and passenger-train of the Atchison, Topeka
& Santa Fe Railroad Company at a railroad and high-
way crossing, and she seeks to recover for the injury
sustained.    The case was before the court in *Railroad
Co. v. Holland*, 58 Kan. 317, 49 Pac. 71, when a judg-
ment in her favor was reversed because some of the
findings of the jury were held to be contrary to the
evidence and inconsistent with each other.    The case
having been remanded, another trial was had, which
again resulted in a verdict against the company, and
with it were returned special findings of fact.    There
is complaint, and not without cause, that some of the
findings were made without due regard to the evi-
dence, and, further, that they are in conflict with one
another.    Without stopping to investigate the merits
of this complaint, we pass to the consideration of the
claim that the failure of the plaintiff to look for a
train when she approached and was about to pass
over the crossing bars a recovery.    The negligence
alleged against the company was the failure of those
in charge of the train to sound the whistle eighty rods
from the crossing, or to give any warning of the ap-
proach of the train to the crossing.    Although some
of her own witnesses testified that signals were given,
others stated that the train approached the crossing
without signal or warning of any kind, and under this
testimony and the finding of the jury we must assume
that the negligence of the company is established.

As to the care exercised by the plaintiff the facts are
not in dispute.    It is conceded that she had lived in
the vicinity of the crossing for twelve years and was
familiar with the surroundings.    The collision oc-

curred on a bright, clear day, when she was returning to her home from Winfield. She was driving a gentle horse, attached to a top buggy, but the top of the same was down, and when she was about to cross the track there was nothing to obscure the view or prevent her from seeing the approaching train at any point within 525 yards of the crossing. She knew the train was due and had not passed. She had in mind the coming of the train, and knew that it would not stop at the station of Hackney, which was near the crossing. She kept a lookout for the train as she traveled from the store, across the switch, and over to a highway which parallels the track, but did not look for the train while traveling down this parallel road for a distance of thirty-seven yards, nor when she arrived at the crossing. On the former trial there was testimony tending to show that she kept a lookout while traveling along the parallel road and before she entered upon the crossing, but at the last trial she expressly stated that she did not look for the train at any time after she reached the parallel road.

Among other findings, the jury state that she knew when the regular train was due, was familiar with the crossing, and could have seen an approaching train just prior to the time she attempted to cross the track if she had looked. It was also found that if the plaintiff had looked for the train during the last seventy-five feet before she drove on the crossing she could have seen it in time to have avoided the disaster, and that if she had stopped her buggy and looked for it during the last 100 feet before she drove on the crossing she could have seen the train. There is also a finding that she knew that the train was likely to come from the north at any time while she was driving the last 100 feet before reaching the crossing, and

that she drove on without turning her face toward the back of the buggy for the purpose of looking for the train that was following her. In this connection the jury found that she could not obtain a view of the track without stopping her vehicle, and in answer to a question as to whether she could see the train when she was about to cross, the jury answered: "No; not without neglecting her horse." In view of the testimony that the horse was gentle, moving along on a jog-trot, at the rate of five miles an hour, with nothing to excite either horse or driver, that the top of the buggy was down, and that there was nothing to obstruct the view or prevent her from seeing the train if she had looked over her shoulder, these findings were little less than absurd, and, like the one finding that she was wantonly run down by those in charge of the train, were without support.

In answer to other questions, the jury expressly found that if she had looked up the track just before going upon the crossing, or while traveling the last thirty-seven yards of the parallel road, she would have seen the approaching train. Although finding that she did not look while traveling that distance, or when she was about to cross, and that she could have avoided the collision if she had looked, the jury found that she was not negligent, and that she exercised due care and prudence in approaching the crossing as she did. These findings, together with the undisputed facts, present the bald question whether a traveler who is expecting a train, approaches the railroad-crossing, having looked for a train when thirty-seven yards away, and then travels the last thirty-seven yards of the highway without looking along the track, does not look when she is about to cross the railroad, when by looking she could have seen the train and

avoided the injury, is guilty of contributory negligence.

The standard of duty of the traveler as measured by the law in such cases is well established, and has been frequently stated by this and other courts. In *U. P. Rly. Co. v. Adams*, 33 Kan. 430, 6 Pac. 530, it was said :

"It is the duty of a traveler upon a highway about to cross a railroad-track to make a diligent use of his senses in order to ascertain whether there is a present danger in crossing. This is required not alone for his own safety, but also for the protection of the lives of the passengers upon the railway-trains. The traveler who fails to take this precaution is not using ordinary care."

In that case it appeared that the traveler drove upon the railroad-track without looking, and although it was shown that the company was negligent in failing to sound the whistle for the crossing, it was held as a matter of law that the plaintiff's negligence barred a recovery. In Beach on Contributory Negligence, § 23, it is said to be " well settled that under such circumstances ( where a railroad-track crosses a highway upon the same level) a traveler must look up and down the track attentively ; and a failure to do this is generally negligence as a matter of law."

In *A. T. & S. F. Rld. Co. v. Townsend*, 39 Kan. 115, 17 Pac. 804, the plaintiff, who was injured at a crossing, looked for the train when he was seventy feet from the track, and then ceased to look, although he had an unobstructed view while traveling the last sixty feet before crossing, and it was held that he was not excused for failing to use his senses in discovering the approach of a train from a point where he could have seen or heard it. The court there recognizes the rule that where the facts are such that different

men might arrive at different conclusions as to the degree of care exercised the question is for the jury, but felt bound to hold that a person who went upon a railroad-track without using his senses to discover whether there was danger, when by looking he could have seen and avoided the danger, is negligent.

In *Roach v. St. J. & I. Rld. Co.*, 55 Kan. 654, 41 Pac. 964, a traveler was killed on a railroad-crossing. It was clear from all the evidence that he could have seen the approaching train, which collided with him, when he was thirty feet away from the track. He was familiar with the crossing and the surroundings, and it was held to be negligence *per se* for him to drive upon a crossing when a regular train was about due without looking for an approaching train which he might have seen in time to have avoided injury to himself if he had looked; and that such negligence will bar a recovery, although the railroad company had failed to give any signals or warning of the approach of the train.

In *Young v. Railway Co.*, 57 Kan. 144, 45 Pac. 583, a person injured in a collision at a railroad-crossing stated that she looked and listened for the train several times after she was within 100 feet of the crossing, and although she could see along the track for eighty rods she saw no train until she was struck by the locomotive. Notwithstanding her testimony the court held as a matter of law that she was guilty of contributory negligence, on the theory either that she did not look and listen as the law requires, or that having looked and listened she saw the train or ought to have have seen it in time to have avoided the injury. It is generally held that the track itself is a warning, and the traveler in possession of his senses is bound to recognize a crossing as a place of danger, and the fail-

ure to make vigilant use of the senses in order to ascertain whether there is a present danger in crossing the track bars a recovery. On account of the great number of accidents which occur on crossings, the law requires vigilance by both railroad employees and travelers upon the highway ; and, as remarked by the chief justice in *Railroad Co. v. Willey*, 57 Kan. 770, 48 Pac. 27, "regard for one's own personal safety and that of others to whom he may stand in dangerous relations requires the exercise of diligence and caution, and the policy of the law should be to impose penalties upon the negligent injurer, and likewise to withhold relief from the negligent sufferer." See, also, *Clark v. Mo. Pac. Rly. Co.*, 35 Kan. 350, 11 Pac. 134; *W. & W. Rld. Co. v. Davis*, 37 id. 743, 16 Pac. 78; *A. T. & S. F. Rld. Co. v. Priest*, 50 id. 16, 31 Pac. 674; *Railway Co. v. Bartley*, 59 id. 776, 53 Pac. 66; *Mann v. The Belt Railroad and Stock-yard Co.*, 128 Ind. 138, 26 N. E. 819; *Haines v. The Ill. Cent. Rld. Co.*, 41 Iowa, 227.

The plaintiff was of mature years, in the full possession of her senses, was anticipating the coming of the train, and was well acquainted with the crossing. Her horse was tractable, and there was nothing at the crossing to obscure her view or prevent her from discovering the danger. She did look for a train when she drove into the parallel road, but not afterward, and with the fact in mind that the train would soon pass she heedlessly drove upon the parallel road a distance of 111 feet without looking for the train; and, worse than that, did not look when she reached the crossing and was about to pass over. These facts being conceded and found, there is no escape from the conclusion that she was culpably negligent. If there was any dispute as to whether she had looked when

about to cross, or a question as to whether looking would have availed her, or if the presence of a flag-man or the surroundings of the crossing had been such as to allay apprehension of danger or blunt her caution, there might have been a question for the jury as to whether there was any excuse for omitting to take the ordinary precautions for her own safety. There was nothing, however, in the existing conditions which prevented her from seeing the danger if she had looked, nor in escaping injury if she had taken this precaution. Under our cases the minimum of care to be exercised by her was to look and listen for the train, where the surroundings admit of this precaution; and some courts go to the extent of holding that it is also the duty of a traveler to stop, look, and listen. In this state it has been held that ordinarily it is not the duty of a traveler on approaching a railroad-track to stop; but that if the view of the track is obstructed, or the conditions surrounding the crossing are such that the traveler cannot by looking and listening determine whether it is prudent to cross the track, he must stop, and whether the circumstances require him to stop is ordinarily a matter for the determination of the jury. (*A. T. & S. F. Rld. Co. v. Hague,* 54 Kan. 284, 38 Pac. 257; *C. R. I. & P. Rly. Co. v. Williams,* 56 id. 333, 43 Pac. 246.)

The failure of a traveler to use his senses to ascertain if there is danger before crossing a railroad, and at least to look and listen for an approaching train, is so manifestly contrary to the conduct of an ordinarily prudent person that the law regards it as negligence. The standard of duty and care in such cases being fixed by law, and the facts, about which there is no controversy, being such as to show beyond question that the plaintiff's conduct did not come up to the

Biggs v. Wire Co.

prescribed standard, but was a plain and palpable want of care, nothing remains for this court but to determine the matter of liability.   It is clear that she neglected to exercise the care which the law required, and as we have seen, there is nothing in the circumstances which excuses her negligence or gives her a right to damages for injuries which would have been averted if she had taken the care dictated by common prudence.

The judgment will, therefore, be reversed, and the cause remanded with directions to enter judgment for the defendant below.