No. 25,375.

CLINE F. MUIR, *Appellee,* v. FRED W. FLEMING and FRANCIS M. WILSON, Receivers of THE KANSAS CITY RAILWAYS COMPANY, *Appellants.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Collision Between Truck and Street Car—Negligence of Street Car Motorman—"Last Clear Chance."* The doctrine of the "last clear chance" is applicable to the situation of the plaintiff where the truck in which he was riding was struck by a street car, the motorman of the same seeing, or should have seen, that the plaintiff was in a dangerous position, from which he could not extricate himself, and the motorman, in the exercise of reasonable care having time to have avoided the injury, failed to do so.

2. SAME—*No Error in Record.* Other objections to the rulings of the court examined and held to be without error.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed July 5, 1924. Affirmed.

E. S. McAnany, M. L. Alden, T. M. VanCleave, O. L. Miller, and C. C. Glandon, all of Kansas City, for the appellants.

L. O. Carter, C. C. Glandon, of Kansas City, and W. W. McCanles, of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The plaintiff while riding on a motor truck was injured in a collision with a street car operated by the defendants. In an action to recover for the injury sustained the jury found for the plaintiff, awarding him $2,500 as damages. Defendants appeal.

The collision occurred near the intersection of Thirty-first and Parallel streets in Kansas City. Double street-car tracks are laid on the center of Parallel street, which runs east and west. Street cars going west travel on the north track and halt at the approach to intersecting streets for passengers to alight or board the cars. On the occasion in question a car of the defendants was going west on the north track. The plaintiff and one Kellner were delivering groceries, using a motor truck for that purpose, and Kellner was driving it. The plaintiff and his companion had been in the employment of the grocery house for some time and were acquainted with the situation, and sometimes the plaintiff drove the machine and sometimes Kellner did, just as might be convenient. When the accident occurred Kellner was driving, and at that time the truck was being driven behind the west-bound street car on the north track, and they had followed the street car for a block or two before reaching Thirty-first street. The street car stopped before entering the intersection at Thirty-first street to allow a passenger to alight. The truck following halted about ten feet behind the street car, and then it was turned south behind the standing street car, and they were proceeding across the south track when it was struck by an approaching car on that track, which was traveling east at a speed of fifteen miles per hour. When the truck passed the hind end of the west-bound car and entered upon the south track, the plaintiff and the driver could only see about eight or ten feet towards the coming car, and at that time the car was forty to forty-five feet from the truck. The motorman on the colliding car could have seen the truck and the plaintiff's peril forty to forty-five feet before striking him, and did not slacken the speed of his car. When the street car collided with the truck the hind wheel of the truck was knocked off and the truck pushed along

the track in that condition about fifteen feet, and then was thrown in an angling direction across Parallel street and against the steel trolley pole about forty feet farther on the side of the street. The plaintiff was not thrown from the truck or injured until the truck struck the steel pole, and by the impact with the pole he was thrown through the wind shield and injured. There was testimony that an existing rule of the campany required that a street car should not be run past one standing for passengers to board or alight from it, and a witness who had been a motorman stated that, assuming that his car on an adjoining track had discharged passengers and was just in the act of starting, but had not gone far enough so that persons or vehicles behind the car would come into view, the car on the other track should be under control so that it could be stopped almost instantly. The negligence alleged was: running the car which collided with the truck at a high and dangerous speed while passing another car which had stopped to discharge passengers; failure to give any warning of its approach; failure to keep a lookout for vehicles crossing the street; failure to bring the car to a full stop when passing a standing car, in violation of existing rules; and failure to keep the car under control or slacken its speed when the plaintiff's peril was discovered by the motorman. Incompetency of those in charge of the car was also assigned as negligence. In answer to special questions submitted to the jury, the following findings were returned:

"1. At the time the truck in question turned from its westward course toward the left, did the plaintiff or the driver do anything to prevent an accident on the south track? Answer: No.

"2. Immediatly before the truck in question went upon the south track, how far could the plaintiff or driver have seen west upon the south track? Answer: Between 8 and 10 feet.

"3. Immediately before the truck in question went upon the south track, was there any obstruction there which prevented the plaintiff or the driver from seeing the approaching east-bound street car? Answer: Yes.

"4. If you answer question 3 in the affirmative, then state what the obstruction was. Answer: West-bound car.

"5. If you answer question 3 in the affirmative, then state if the plaintiff or driver would have stopped the truck before entering the south track, would the obstruction have been removed so that the plaintiff or the driver could have seen the approaching eastbound car? Answer: Yes.

"6. At what rate of speed was the truck in question traveling just before it entered the south track? Answer: Three or four miles per hour.

"7. At what rate of speed was the east-bound street car in question traveling

at the time the truck came into view from behind the west-bound street car? Answer: Fifteen miles per hour.

"8. Within what distance can a street car of the type and style of the east-bound street car be stopped, going at the rate of speed you find in answer to Question 7, under the circumstances as disclosed by the evidence in this case? Answer: Forty-five feet.

"9. Was the west-bound street car standing still and discharging passengers, or was the said car in motion, when the truck in question came from behind it, going toward the south track? Answer: Standing still.

"10. How far did the east-bound street car move after striking the truck in question? Answer: About 40 feet.

"11. How far down, east, along the south track did the east-bound street car push and drag the truck, if at all? Answer: About 15 feet.

"12. State the act or acts of negligence of which you find the plaintiff or driver of the truck guilty, which was the proximate cause of plaintiff's injury, if you find any such negligence? Answer: None.

"13. State the act or acts of negligence of which you find the defendants guilty, which was the proximate cause of plaintiff's injury, if you find any such negligence? Answer: Should have had his car under control when passing a standing car.

"14. How far away from defendants' east-bound car was the plaintiff when he came into view of the motorman and conductor of said street car? Answer: Forty or forty five feet.

"15. Could the motorman, after he saw, or by the exercise of ordinary care could or should have seen, the plaintiff in a position of peril, have stopped or slackened the speed of said street car in time to have prevented injuring him? Answer: Yes."

Upon the facts of the case both parties were manifestly negligent. The court instructed the jury that as a matter of law the plaintiff was negligent in driving upon the street-car track as he did without taking proper precautions for his safety, and that his neglience would bar a recovery unless it was shown that after the truck reached the position of danger from which plaintiff could not extricate himself, the defendants' motorman, when he saw or should have seen plaintiff's peril, did not exercise reasonable care to avoid injuring plaintiff; saying, that if he saw, or in the exercise of ordinary care and prudence ought to have seen, the plaintiff's position of danger in time to have avoided the injury, and failed to do so, the plaintiff might recover. The principal question submitted is, Did the motorman fail to make reasonable efforts to avoid injuring the plaintiff after he discovered or should have seen the plaintiff's peril, and when the conditions were such that he could not help himself? In the situation the doctrine of "the last clear chance" was plainly applicable. That doctrine is based upon the theory

that where a person is placed negligently in a position of danger from which he is unable to extricate himself, and where such peril is known to one whose effort may avoid it, or the circumstances and surroundings are such that he ought to have known of the peril, it is the duty of the latter to then exercise reasonable care to avoid injuring the one so in peril, and the failure to do so is actionable negligence which affords the first a basis of recovery. (*Railway Co. v. Arnold,* 67 Kan. 260, 72 Pac. 857; *Dyerson v. Railroad Co.,* 74 Kan. 528, 87 Pac. 680; *Springer v. Rld. Co.,* 95 Kan. 408, 148 Pac. 611; *Atherton v. Railway Co.,* 107 Kan. 6, 190 Pac. 430.) Plaintiff's perilous plight was or could have been readily seen when the street·car was forty to forty-five feet away from him. The evidence tends to show, and the jury have found, that the motorman in the exercise of ordinary care could have stopped his car in that distance or so slackened the speed as to have prevented the injury. This was not done. On the contrary, he drove on with such speed and struck the truck with such force as to push the crippled car along the track for fifteen feet and then hurled it across the street—a distance, according to the evidence, of about forty feet, against the pole planted on the side of the street. The street car was not stopped by the collision, but the speed was such than it ran forty feet beyond the point of collision before it was halted. The plaintiff was not injured when the collision occurred with the truck, nor until it crashed against the trolley pole forty feet away on the side of the street. We think the evidence and findings warranted the inference that the motorman failed to do what he could and should have done to avoid the injury to plaintiff after he saw or should have seen that the situation was such that plaintiff was unable to save himself.

The contention that certain special findings are not sustained by the evidence cannot be upheld. Neither do we find anything substantial in the objections to the instructions given by the court.

Judgment affirmed.