WILLIAM S. CAYLOR v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.—59 S. W. (2d) 661.

Division One, April 20, 1933.

852

*E. T. Miller, Mann, Mann & Miller* and *H. W. Timmonds* for appellant.

*Edwin L. Moore, Charles Stephens, C. E. Rumery* and *C. R. Stauffacher* for respondent.

GANTT, J.—Action for damages for personal injuries. At ten A. M. on February 12, 1928, an automobile driven by plaintiff was struck by an engine of defendant at a public crossing in Fall River, Kansas. The trial was under the applicable law of Kansas pleaded in both the petition and answer. Judgment for $50,000. Defendant appealed.

The petition charged negligence as follows: (a) Defective crossing in that same was not constructed and maintained as provided by statute; (b) failure of the crossing bell to ring; (c) failure to provide a watchman or gates at the crossing, and (d) violation of the last clear chance rule under the law of Kansas in that defendant negligently failed to reduce the speed of the passenger train at and during the time plaintiff was in peril.

The answer was a general denial with a plea of contributory negligence under the law of Kansas. The reply was a general denial.

The case was submitted to the jury under the last clear chance rule and the charge that defendant negligently constructed and maintained the crossing, thereby causing the collision and injury to plaintiff. The statute required the crossing between the tracks to be constructed of crushed rock, gravel, wood, burned slag or other hard substance.

It will be noted that there was no charge of negligent failure to give signals by either engine bell or whistle. The evidence for plaintiff and defendant tended to show that the engine whistled for the

station and crossing. It also tended to show that it whistled for and to the order board in front of the station. Thereafter a number of danger signals were given when the engine was near the point of collision.

Defendant contends that the court erred in submitting to the jury the charge of negligent construction and maintenance of the crossing. It was a charge of primary negligence. We will rule the question on defendant's contention that plaintiff was guilty of contributory negligence as a matter of law. There was evidence as follows:

The highway (Main St.) in Fall River runs north and south and is eighty-five feet wide between sidewalks. It intersects at right angles three tracks of defendant. The north track is the main track and point of collision. It is almost straight for half a mile west of the crossing. A row of sand and coal bins about six feet high and twelve feet wide north and south are located immediately south of the south track and immediately west of the highway. Immediately south of the bins is a driveway into a lumber yard. In the lumber yard are buildings facing the driveway. Immediately south of the driveway is the office building of the lumber yard. The north wall of the bins is thirty-three feet from the main track and twenty-five feet from the north wall of the office building. A short distance east of the highway and south of the south track is an elevator. The stock pens are south of the south track and about three hundred fifty feet east of the highway. On the day in question cattle cars were on the south track and in front of the stock pens. The depot is north of the main track and about one hundred twenty-five feet east of the highway. The space between the rails of each track for the width of the travel portion of the highway was planked with heavy oak boards, and there was one board on the outside of each rail. There was no complaint of this part of the crossing. But the surface of the highway between the tracks was dirt mixed with a few cinders, ashes and chat. The movement of cars and other vehicles over the crossing wore holes in the surface. It was rough and irregular. There was a hole (so-called) immediately south of the plank on the south side of the south rail of the main track. It was three or four feet wide and north and south and six or eight inches deep. It was not abrupt but sloped from the edge so that it was deepest about the middle. The distance between the tracks was twelve feet and between the rails of the track five feet.

Plaintiff approached the crossing from the south, driving a Hudson sedan sixteen feet long at fifteen miles per hour. The steering gear was on the left side and the window on said side was open. In the vicinity of the lumber yard office he looked northwest over the bins and neither saw nor heard a train approaching. He then reduced the speed of the car to five miles per hour and proceeded north to the

south track where he gave attention to a hole in the street and then looked east for an approaching train. As he proceeded northward, he continued to look east and at the crossing bell (which was not ringing) located north of the main track and on the west side of the highway. He continued without stopping. He did not again look west until his car was over the middle track and the front wheels moving on to the south rail of the main track. At that time he testified that the engine was within sixty or seventy feet of his automobile and was giving rapid danger signals with the whistle. He had driven over the crossing at five miles per hour and was moving at that speed when he saw the engine approaching. He did not think he had time to back from the track and applied the gas in an effort to clear the crossing and escape injury. He testified that a hind wheel of the car ran into the hole south of the south rail of the main track, which prevented the gas from increasing the speed of the car. However, the car continued to move over the main track at five miles per hour. It did not clear, for the north pilot step of the engine caught the left hind wheel of the automobile, overturning it and injuring plaintiff. At the time the engineer gave the danger signals and at the time of the collision the train was running from twelve to fifteen miles per hour. It regularly stopped at the station east of the highway and the speed had been reduced for that purpose.

██ Plaintiff admits that if he had looked west he could have seen the approaching train and stopped within one or two feet and before he was in peril. But he argues that in traveling over the crossing his time was occupied in looking at a hole in the crossing near the south track, in looking east and in looking at the crossing bell and listening to determine if it was ringing. There is no evidence tending to show that the hole near the south track interfered with the movement of the automobile, and it was not necessary to look at the crossing bell to determine if it was ringing. Furthermore, in looking east he instantly had a full view of all the tracks. He had ample time to look west. If he had done so, there would have been no collision. Under the law of Kansas he was guilty of contributory negligence as a matter of law. [Williams v. Railroad, 122 Kan. 256, 252 Pac. 470; Bunton v. Railroad, 100 Kan. 169, 163 Pac. 801; Dearing v. Railroad, 285 Pac. 621; Rathbone v. Railroad, 113 Kan. 257, 214 Pac. 109; Williams v. Railroad, 102 Kan. 268, 170 Pac. 397; Adams v. Railroad, 93 Kan. 475, 144 Pac. 999; Atkinson v. Lusk, 103 Kan. 446, 173 Pac. 914; Wehe v. Railroad, 97 Kan. 794, 156 Pac. 742; Grisham v. Traction Co., 104 Kan. 712, 181 Pac. 119; Vance v. Railroad, 298 Pac. 764; Railroad Co. v. Willey, 60 Kan. 819, 58 Pac. 472; Mourning v. Railroad, 110 Kan. 417, 204 Pac. 721; Dyerson v. Railroad, 74 Kan. 528, 87 Pac. 680; Jamison v. Railroad, 122 Kan. 305, 252 Pac. 472-4; Bazzell v. Railroad, 300 Pac. 1108; Atchison, T. & S. F. Railroad Co. v. Holland, 60 Kan. 209, 56 Pac. 6; Reader v. Rail-

road, 112 Kan. 402, 210 Pac. 1112, 1113; Young v. Railroad, 57 Kan. 144, 45 Pac. 583; Gaffney v. Railroad, 107 Kan. 486, 192 Pac. 736; Rule v. Railroad, 107 Kan. 479, 192 Pac. 729; Whiteker v. Railroad, 125 Kan. 683, 265 Pac. 1103, 1104.]

Defendant next contends that the court erred in submitting to the jury the charge of negligence under the last clear chance rule. In this connection it should be stated that the engineer and fireman were not called as witnesses.

In Kansas no duty of defendant arises under the last clear chance rule so long as plaintiff is guilty of contributory negligence. If such negligence of plaintiff ceases and he is in peril, it is the duty of defendant to exercise reasonable care to prevent injury to plaintiff. In Bazzell v. Railroad, 300 Pac. (Kan.) 1108, 1110, it was said:

" 'This doctrine can be invoked in negligence cases only where the party relying upon it has by his own prior negligence gotten himself into a predicament from which his subsequent diligence will not avail to extricate him without injury or damage through the act or delict of another party, but where such other party has a fair opportunity—a last clear chance—to avert or minimize the accident, injury, or damage, by the exercise of reasonable diligence after the negligence of the first party has ceased.' [Jamison v. Atchison, T. & S. F. R. Co., 122 Kan. 305, 308, 252 Pac. 472, 473.]" The rule is well stated in Dyerson v. Railroad, 74 Kan. 528, 536, 87 Pac. 680, as follows:

"The test is, What wrongful conduct occasioning an injury was in operation at the very moment it occurred or became inevitable? If just before that climax only one party had the power to prevent the catastrophe, and he neglected to use it, the legal responsibility is his alone. If, however, each had such power and each neglected to use it, then their negligence was concurrent, and neither can recover against the other."

In the instant case the negligence of plaintiff ceased at the time the front wheels of the automobile moved on to the south rail of the main track and he looked west and saw the engine. He was then in peril. Thereafter he was not guilty of negligence and from that time it was the duty of defendant to exercise ordinary care to prevent a collision. As plaintiff turned to look west the engineer gave a danger signal and continued to do so until the collision. Plaintiff contends that he should have released the air and applied the brakes. In Clark v. Railroad, 127 Kan. 1, 272 Pac. 128, 129, it was held that the engineer was not negligent in sounding the whistle instead of applying the brakes. But plaintiff's expert, the only witness on the question, testified that the engineer could have applied the brakes with his other hand at the time he gave the first danger signal. He

testified that if the engineer had done so when the engine was seventy feet from the automobile, its speed would have been reduced six miles per hour while moving twenty-five feet, and six more miles per hour while moving the next twenty feet, and would have been moving three miles per hour when it moved the seventy feet. He also testified that in giving this opinion he assumed that no air had previously been released to reduce the speed. The testimony of this witness will not stand analysis. He testified that it would take one or two seconds for the brakes to become effective after a release of air. In so testifying he assumed that no air had previously been released. He also testified that if air had been previously released, it would take even longer for the brakes to become effective. The engine was moving twelve to fifteen miles an hour. If twelve miles an hour, it moved 15.6 feet per second. If fifteen miles an hour, it moved twenty-two feet per second. It follows that during the second before the air became effective, the engine would move either fifteen or twenty-two feet. It also follows that if the air was two seconds in becoming effective, the engine would move either thirty or forty-four feet. The speed of the train had been reduced to make the stop at the station. Of course, in doing so air must have been released. If the engineer again released air when seventy feet from the automobile, it would, according to the testimony of the witness, have taken more than one or two seconds for the brakes to become effective. Furthermore, the automobile moved over the crossing at five miles per hour, or 7.33 feet per second. The automobile was sixteen feet long, the distance between the rails five feet, and the step on the north side of the pilot extended two and one-half feet from the north rail. The automobile moved this distance (23.5 feet) in about three seconds. Therefore, the engine was three seconds from the crossing at the time the front wheels of the automobile moved on to the south rail of the main track. If the engine was moving twenty-two feet per second, it was sixty-six feet from the automobile at the time the front wheels of the automobile moved on said south rail. If it was moving 15.6 feet per second, it was forty-six feet from the automobile at the time the front wheels of the automobile moved on said rail. The witnesses for plaintiff who were near the crossing testified they heard the noise of the application of the brakes to the wheels at the time, or after the collision. One of the witnesses for plaintiff testified that the engine was 150 feet west of the crossing when it gave the first danger signal. If so there would have been no collision. The testimony is contrary to the physical facts. From a consideration of all the evidence on the question of the application of the brakes, it appears that the engineer must have released the air at or about the time he gave the first danger signal.

The evidence most favorable to plaintiff shows that the engineer did not have a "clear chance" to prevent the collision. "There

was only a possibility he might do so." [Mourning v. Railroad, 110 Kan. 417, 204 Pac. 721; Williams v. Railroad, 122 Kan. 256, 252 Pac. 470.] In other words, there was no substantial evidence tending to show that the engineer failed to exercise ordinary care to prevent the collision. Plaintiff cites Muir v. Railroad, 116 Kan. 551, 227 Pac. 536; McMahon v. Railroad, 96 Kan. 271, 150 Pac. 546; Springer v. Railroad, 95 Kan. 408, 148 Pac. 611, and Juznik v. Railroad, 109 Kan. 359, 199 Pac. 90. In those cases the facts were different. After the collision the defendant pushed the car or vehicle some distance, which caused or contributed to the injury.

The judgment should be reversed. It is so ordered. All concur.