MAMIE (LYDA) BOLLINGER v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.—67 S. W. (2d) 985.

Court en Banc, February 3, 1934.

*E. T. Miller, Henry S. Conrad, L. E. Durham* and *Hale Houts* for appellant.

722

*Frank M. Lowe, B. W. Boley* and *John D. Wendorff* for respondent.

STURGIS, C.—This is a suit for personal injuries in which plaintiff recovered judgment for $15,000 and defendant has appealed. The case is based on the same essential facts as that of Sing v. St. Louis-San Francisco Railway Company, reported in 30 S. W. (2d) 37, and involves the same accident. On September 19, 1923, the plaintiff and Clyde Sing were traveling north from Olathe, Kansas, toward Kansas City, Missouri, in a Ford sedan, the highway cross-

ing the double track of defendant some three miles north of Olathe at Pleasant View. In crossing from the west to the east side of the railroad the automobile was struck by defendant's passenger train going north towards Kansas City on the east one of the two tracks. Both the highway and the railroad run in the same general direction, north and south, but at this crossing the highway, to one traveling as this car was, turns east and crosses the railroad from the west side to the east side and then proceeds northward. In and by this collision the automobile was completely demolished and Sing, the driver, was killed and this plaintiff, riding with him on the front seat, was severely and permanently injured. Sing's widow was plaintiff, suing for his death, in the Sing case, supra, and this plaintiff is the Miss Lyda mentioned in that case as the chief witness, and she here sues for her own injuries received at the same time and place. The facts connected with the accident then and now in controversy are stated at some length in the Sing case, supra, to which the reader is referred, and need not be again restated in detail. The witnesses are the same in this trial as in that one and give substantially the same evidence, much of it being read from the record in that case. The pleadings are also substantially the same, the grounds of negligence alleged on defendant's part being (1) that the railroad crossing where the accident occurred was rough, uneven and defective, in violation of the Kansas statute, where the accident occurred; (2) that defendant failed to sound the whistle as required by the Kansas statute on approaching this crossing; (3) that defendant violated the last chance doctrine. The defendant filed a general denial and pleaded contributory negligence on plaintiff's part. Both parties concede that the case is governed by the substantive law of Kansas, where the injuries occurred, and each pleaded certain relative statutes and decisions of that state. The trial court overruled the defendant's demurrer to the evidence and submitted the case to the jury on separate instructions covering each of the grounds of negligence mentioned.

The statute of Kansas, pleaded and put in evidence, requires railroad trains on approaching crossings of public highways to sound at least three blasts of the whistle a quarter of a mile from the crossing. Defendant concedes that the evidence is conflicting as to whether the train in question did so on the morning when this collision occurred and "concedes that there was some evidence authorizing the submission to the jury of the issue whether the train whistled." Unless plaintiff was guilty of contributory negligence as a matter of law, this authorized a submission of the case to the jury. On the question of plaintiff's contributory negligence, in that she and her companion, Sing, who did the driving, drove on this railroad crossing immediately in front of the on-coming train, the plaintiff admitted that there was an unobstructed view of a straight

track for a half mile south of this crossing, and as the highway was substantially parallel with the railroad till it turned east to make the crossing, she and the driver had an unobstructed view of the train for all that distance to the point of collision. For convenience, we speak of the railroad running north and south, though it was at an angle northeast and southwest and the automobile going north turned east and crossed the two parallel tracks somewhat at an angle. The only reason for not seeing this train on approaching the crossing was that the morning was cloudy and it was misting rain and there was a fog, especially over low ground. Plaintiff's witness Adams, who was driving a truck south and approaching this crossing from the north and facing both the train and the plaintiff's automobile, said he saw the collision from a point 150 yards north and east of the crossing. He testified:

"Q. Describe to the jury what you saw, how this accident happened? A. I was going down the road, and it was foggy, and about all I could say, it looked like the train jumped out of that fog and hit the car; that is about all there is to it.

"Q. How far away from the automobile was the train when you first saw it? A. Looked like it was right on it."

Plaintiff also testified that as she and Sing approached this crossing from the south the fog was heavy in places, gathered in pockets and layers, and this obstructed the view of the train so that neither she nor the driver, Sing, saw this train or heard it before it struck the car, although they both were looking and listening. Her further evidence is that the road, not being paved, was muddy and travel thereon slow, and when they came within two car lengths of the crossing they stopped and killed the engine in doing so; that they looked both ways and listened attentively and could neither see nor hear a train; that they then went forward up a slight grade to the first track, crossing it and the uneven space between the two tracks onto the second or east track, and were nearly over it when the northbound train on that track struck the rear end of their Ford sedan. She testified that they both kept looking and listening for a train but neither saw nor heard it. The evidence all is that the train was running at fifty miles per hour and plaintiff says that the automobile was going, when the collision occurred, not over four or five miles per hour. (In the Sing trial the evidence was that it was going two or three miles per hour.) It is disclosed incidentally that, although long after sun-up, the locomotive headlight was yet burning, doubtless on account of the gloom, mist and fog. Under these facts, although defendant's evidence was to the effect that the fog and mist did not materially interfere with vision and that the train was plainly visible as it approached the crossing, the defendant in its statement here says: "Under these circumstances we therefore concede that there was some evidence that plaintiff was not

chargeable with contributory negligence." The court, therefore, very properly overruled the demurrer to the evidence and submitted the case on defendant's negligence in failing to give the statutory warning required by statute on approaching a road crossing and, on this phase of the case, on plaintiff's contributory negligence as a complete defense thereto. If this was all of the case, we would have no difficulty in affirming the judgment. We so ruled on much the same facts in the Sing case, though Sing was the driver and controlled the movements of the car, while here plaintiff was a passenger or guest.

It will not be necessary to set out the evidence as to the crossing in question being rough and difficult to travel over and not constructed and maintained as the Kansas statute requires. That statute requires the crossing to be made of certain hard materials and to be on a level with the top of the rails and on the same grade as the railroad for thirty feet on each side of the middle of the track. This crossing was made of timbers four inches thick and eight-inch surface. A photograph shows six such timbers between the rails and one on each side parallel therewith. The space between the two tracks was made of chats. The evidence for plaintiff is that same was an inch or inch and a half lower than the tops of the rails; that an automobile had to come up grade to reach the first track and then down between the tracks, and the same thing as to the second track; that the timbers were worn, warped and split and there were holes in both the timbers between the rails and the chats between the two tracks. Defendant frankly "concedes that the evidence was conflicting as to whether the crossing was rough." This was clearly a question for the jury, provided the defects in or roughness of the crossing in any way contributed to the collision and plaintiff's injuries.

Defendant's contention is that there is no causal connection whatever between the collision of the train and the defective condition of the crossing. The defective condition of this crossing has an obvious bearing on the question of plaintiff's contributory negligence as the rough and uneven surface of same would naturally require the driver of the automobile to give close attention to the objects in his way of travel and divert his attention from a coming train. This evidence, however, was not introduced for or confined to that proposition, but was treated as an independent ground of negligence complete in itself. The only other apparent effect of the rough and difficult crossing was to lower the speed of the automobile and prolong the time necessary to complete the crossing. This is plaintiff's insistence and she stresses the fact that the collision did not occur until the car was nearly over the last rail of the last track and that in another half second it would have cleared the track and averted the collision. We may here note that plain-

tiff's evidence is that the automobile, when struck by defendant's engine, had progressed so far that both of the front wheels and one rear wheel (the crossing being at an angle) had passed over the east rail of the east track and the other or left hind wheel was just at or on the east rail. In some three feet more it would have cleared and that would have taken only a half second, but would not the same result have been accomplished had plaintiff's driver started the car a half second sooner when it stopped with a dead engine shortly before entering on the crossing? At neither time did the driver or plaintiff know of an approaching train, nor was he attempting to move the automobile with reference to that fact. This case is not like that of Evy v. Davis (Mo. App.), 244 S. W. 954, referred to in the Sing case, supra, where the plaintiff, nearing the crossing, could not see the coming train on account of obstructions until he was ten feet from the crossing, and then saw it some one hundred seventy-five feet distant, and knowing that at his rate of speed he could easily cross the track ahead of the train, attempted to do so, but because of the difficult crossing his car was caught and held on the track till the train struck it. In the present case there was to the driver of the car no reason for going faster over this crossing, nor is there any evidence that he was attempting to do so or would have done so had the crossing been smoother. Granting that the jury could properly infer from the rough and defective condition of this crossing that the driver of this automobile could, except for that condition, have driven faster over the same and thereby escaped the coming train, yet is there anything except a further inference from that one that he would have done so? It is not allowable to base one essential inference on another.

This question will be further noted in discussing the next assigned error, that the court erred in submitting the case on the last chance or humanitarian doctrine. As that doctrine is applied in Kansas, it requires a finding that defendant was negligent in not lowering the speed of the train after it discovered or should have discovered plaintiff in helpless and imminent peril. It is apparent that lowering the speed of the train would have the same effect in allowing plaintiff to escape the collision as would increasing the speed of the automobile.

The next assignment of error is that the court gave an instruction, the substance of which is (omitting the phrase "if you so find" at several places), to-wit: "If you find that plaintiff approached and went upon and was crossing over defendant's railroad tracks, and in so doing plaintiff was then and there approaching or going into a position of imminent danger and peril from the approach of said locomotive and train of cars, and was oblivious thereof, and that defendant, its agents and servants in charge of said locomotive knew, or by the exercise of ordinary care could have known that

plaintiff was approaching or going into such position of danger and peril (and was oblivious thereof), in time for defendant, by the exercise of ordinary care and by the use of the means at hand, to have slackened the speed of said locomotive, and that thereby defendant could have prevented said collision and the injury to plaintiff, and failed so to do, and was thereby guilty of negligence; and if you further find and believe from the evidence that as a direct result of such negligence on the part of defendant said locomotive collided with the automobile in which plaintiff was riding, and said plaintiff was thereby injured, then your verdict must be for the plaintiff; and this is the law under this instruction even though the jury should further find and believe from the evidence that said Clyde Sing and this plaintiff were both negligent in getting into such position of imminent danger and peril, if you so find.'' The words in parenthesis are not in the instruction as given, though we think it clear that under our humanitarian rule the jury should have been required to find that defendant knew, or could have known, not only that plaintiff was approaching or going into danger and peril, but that she was oblivious thereto, all in time to have avoided the accident.

The chief error complained of in this instruction is that it does not clearly set forth the last chance or humanitarian rule as applied in Kansas and that under the law as there administered the facts of this case do not make a submissive case on such theory. We are constrained to sustain this contention. This instruction is based on the theory and is designed to eliminate the defense of contributory negligence. We are holding in this case that plaintiff was not, under the facts favorable to her, guilty of contributory negligence as a matter of law, and so the jury could have found, but plaintiff was fearful the jury might find her guilty of contributory negligence in going on this crossing ahead of this train, and so by this instruction sought to recover in spite of her own negligence.

The Kansas courts have adopted what may be termed the strict last chance doctrine of recovery as distinguished from the humanitarian rule adopted in this State, each of which allows a plaintiff to recover notwithstanding his own contributory negligence in going into the peril. The Kansas rule is more limited in its application than the Missouri rule. We had occasion to examine this matter in the recent case of Caylor v. St. Louis-San Francisco Ry. Co., 332 Mo. 851, 59 S. W. (2d) 661, and held that under the law of Kansas a plaintiff's contributory negligence ceases to be a complete defense only when such plaintiff is in helpless peril, that is in a condition of peril from which he cannot by the exercise of reasonable care extricate himself. So long as the plaintiff has the power to avert the danger by using reasonable care, it is his duty to do so and his failure to do so is negligence concurrent with and contributory to

that of the defendant and bars recovery. The same idea is expressed in saying that the last chance doctrine begins to be applicable only when plaintiff's contributory negligence is at an end. In a railroad crossing case the plaintiff's contributory negligence ceases only when he or she has progressed so near to the railroad track that it is practically impossible to avoid a collision by the means at hand. The plaintiff is then in helpless or inextricable peril, is no longer negligent, and previous negligence in going into such position is wiped out, and if the defendant yet has the ability to avert the collision by due care and the means at hand, and fails to do so, it is liable. This, as we understand it, is the Kansas last chance doctrine. It is not limited, however, to an actual seeing or discovery by defendant of the plaintiff's helpless peril, but includes such peril as defendant could discover by due care and vigilance. This court recognized such to be the Kansas rule in the Sing case, supra, when it approved the statement of the rule that "the Kansas Supreme Court decisions are to be interpreted thus: 'If the negligence of a plaintiff concurs with the negligence of a defendant up to the very moment of the casualty (or so near thereto that same is inevitable), no recovery can be had. The duty of the defendant to avert an injury arises (under the last chance doctrine) immediately after the contributory negligence of the plaintiff ceases.'" (Parenthesis ours.) And in the Caylor case, supra, we said: "In Kansas no duty of defendant arises under the last clear chance rule so long as plaintiff is guilty of contributory negligence. If such negligence of plaintiff ceases and he is in peril, it is the duty of defendant to exercise reasonable care to prevent injury to plaintiff. In Bazzell v. Railroad, 133 Kan. 483, 300 Pac. 1108, 1110, it was said: " 'This doctrine can be invoked in negligence cases only where the party relying upon it has by his own prior negligence gotten himself into a predicament from which his subsequent diligence will not avail to extricate him without injury or damage through the act or default of another party, but where such other party has a fair opportunity —a last clear chance—to avert or minimize the accident, injury, or damage, by the exercise of reasonable diligence after the negligence of the first party has ceased." [Jamison v. Railroad, 122 Kan. 305, 308, 252 Pac. 472.]'" This court then added: "The rule is well stated in Dyerson v. Railroad, 74 Kan. 528, 536, 87 Pac. 680, 683, as follows: 'The test is, what wrongful conduct occasioning an injury was in operation at the very moment it occurred or became inevitable? If just before that climax only one party had the power to prevent the catastrophe, and he neglected to use it, the legal responsibility is his alone. If, however, each had such power and each neglected to use it, then their negligence was concurrent, and neither can recover against the other.'" This court then further added: "In the instant case the negligence of plaintiff ceased at the

time the front wheels of the automobile moved on to the south rail of the main track and he looked west and saw the engine. He was then in peril. Thereafter he was not guilty of negligence and from that time it was the duty of the defendant to exercise ordinary care to prevent a collision." That this rule is so limited in Kansas is held in cases cited by plaintiff. Thus in Muir v. Railroad, 116 Kan. 551, the court said: "The principal question submitted is: Did the motorman fail to make reasonable efforts to avoid injuring the plaintiff after he discovered or should have seen the plaintiff's peril? . . . In that situation the doctrine of 'the last clear chance' was plainly applicable. That doctrine is based upon the theory that where a person is placed negligently *in a position of danger from which he is unable to extricate himself,* and where such peril is known to one whose effort may avoid it, or the circumstances and surroundings are such that he ought to have known of the peril, it is the duty of the latter to then exercise reasonable care to avoid injuring the one so in peril, and the failure to do so is actionable negligence which affords the first basis of recovery. (Citing Kansas cases.) . . . We think the evidence and findings warranted the inference that the motorman failed to do what he could and should have done to avoid the injury to plaintiff after he saw or should have seen that the situation was such that *plaintiff was unable to save himself.*" And in Atherton v. Railway Co., 107 Kan. 6, the court said: "Counsel for the defendant frankly concede that the doctrine of last clear chance, as frequently declared in this state, applies when the defendant actually finds the plaintiff in a condition of peril, or by the exercise of proper care should so find him; *his own negligence at that time having ceased.*" We, therefore, think that clearly the Kansas doctrine of last clear chance is based on and limited to cases where the plaintiff is in helpless or inextricable peril, though so placed by his own negligence, and the defendant discovers or ought to discover him in that condition and yet has the ability by due care and the means at hand to avoid the injury, but fails to do so. The Missouri doctrine known as the humanitarian rule or rule of "discovered negligence" goes further than this and applies same to an act of a plaintiff going into or continuing in peril, oblivious of the danger, though his being oblivious is due to his own negligence and he could, if he would, avoid the impending danger. Thus in this State a person may heedlessly and deliberately approach and go across a railroad track with bowed or averted head, looking neither to the right nor the left, and oblivious to his surroundings, when, if he would but look, he would see a coming train and could avoid injury, yet if the operator of the train sees or by proper care would see such person going into or continuing in the danger zone, but oblivious of the impending danger, though negligent in being so, he must use all proper care and means

to avoid injuring him. In other words, he must not, if he can avoid it, run down or injure a careless man, though his very carelessness is an integral part of his peril, and he could, if he would, avert such peril. [Ellis v. Metropolitan Street Ry. Co., 234 Mo. 657, 680, 138 S. W. 23; Thompson v. Quincy, Omaha & K. C. Ry. Co. (Mo.), 18 S. W. (2d) 401; Logan v. C., B. & Q. Ry. Co., 300 Mo. 611, 628, 254 S. W. 705.] The Missouri rule is aptly described by the term "discovered negligence" and requires a person operating a dangerous instrumentality to use diligence in avoiding injury to a person whom he sees or could see in or going into peril, regardless of such person's continuing negligence. Such, however, seems not to be the Kansas law and to an extent a person may be unfortunate in being injured in Kansas.

That the instruction in question follows the Missouri law rather than the Kansas law seems obvious, for it reads that if plaintiff in this case was approaching or going into a position of danger from the approach of this train and *was oblivious thereof,* regardless of her negligence or when it ceased, the humanitarian doctrine seized on the situation, and if the operators of the train "by the exercise of ordinary care could have known that plaintiff was approaching or going into such position of danger and peril in time . . . to have slackened the speed of said locomotive, and that thereby defendant could have prevented such collision . . . and failed to do so," and that "as a direct result of such negligence" plaintiff was injured, then to find for plaintiff. This may be the humanitarian doctrine of Missouri, but is not the last chance doctrine of Kansas.

Nor do we think that the facts most favorable to plaintiff permit a submission of the case on the last chance rule of Kansas. An instruction on this theory must assume or proceed on the theory that the jury would believe defendant's evidence that the mist and fog did not obstruct a view of the coming train, but that it was in plain view of the plaintiff and the driver of the car for something like a quarter of a mile from the crossing, and if the plaintiff and the driver had looked when about to go onto the first track or anywhere near there, they must have seen the coming train. The roughness of the crossing did not absolve them from the duty of looking for a coming train, nor would it hinder them from stopping when seeing it. It is not shown how quickly this particular car could have stopped, but common knowledge of automobiles, and particularly of Fords, makes us know that at the speed this car was going, not to exceed four or five miles per hour, it could have been stopped, if plaintiff had looked, when quite close to the east track. It was not shown that there was not sufficient space between the two tracks to have stopped there. Assuming, as we must, for the purpose of applying the last chance doctrine, that the train was in plain sight,

the plaintiff's negligence in not looking and seeing it and stopping the car in safety continued to a very short distance of the first rail of the east track. Then for the first time was she and the driver of the car in helpless peril and unable by reasonable care to extricate themselves therefrom. Such was our holding under similar facts in the Caylor case, supra. Then for the first time did the last chance doctrine seize on the situation for then for the first time did plaintiff's contributory negligence cease. Under the Missouri rule, if it was apparent to the trainmen that plaintiff was proceeding into peril unaware of and oblivious to her peril, defendant's duty to take steps to avoid the collision would have arisen sooner. We do not believe that it will be seriously contended that when plaintiff was at the first rail of the last track the defendant yet had time to lower the speed of the train so as to avoid the collision. The railroad track occupied about five feet. The automobile would have to go this five feet plus its own length to be in the clear. The train was going at least ten to twelve times as fast as the automobile. The engineer testified that when the brakes were actually applied there would hardly be a perceptible decrease in the speed in one hundred feet, and this was all the evidence on that subject. It took the train all of a quarter of a mile to stop when the brakes were actually applied. The automobile, according to plaintiff's evidence, lacked, when struck, at least three to three and one-half feet of being in the clear, and the physical facts as to the wreckage indicated that it was struck nearly center. The engineer, whose seat was on the east side and the view of the west side of the crossing obstructed by the front of the locomotive, said he never saw the automobile. The burden of proof is on the plaintiff as to this issue and under these facts it would be purely speculative, if not highly improbable, to find that a sufficient lowering of the speed could have been had so as to avert the collision after the plaintiff could be seen in helpless peril.

■ Considering the facts from another point of view, the submission of this case on the last chance theory was error. That theory requires a finding that the operators of the train saw or could have seen the plaintiff in helpless peril in time to have avoided the collision by lowering the speed of the train. The same gloom, mist and fog which prevented plaintiff and the driver of the Ford car from seeing the coming train also prevented the operators of the train from seeing the approaching Ford car. It is true that the evidence as to this being the real condition was conflicting and the jury might have found either way, but it could not find the same fact both ways. In determining whether plaintiff was guilty of contributory negligence the jury might and properly did find that on account of the fog and mist the plaintiff could not see the coming train, but, if so, it could not in the same case, in considering the

last chance rule, find that the trainmen could see the automobile in helpless peril. The fog and its effect on vision was a physical fact, as to which the jury could make but one finding. The plaintiff and the engineer of the train testified to the exact opposite of each other on this point and the jury could not believe both—plaintiff on the issue of contributory negligence and the engineer on the issue raised by the last chance rule. When the plaintiff testified that the mist and fog was such as to prevent her seeing the coming train, though looking for it, she was in effect testifying that the trainmen could not see the automobile, and that destroyed the last chance theory of the case. [Weddle v. St. Joseph Ry., Light, Heat & Power Co. (Mo. App.), 47 S. W. (2d) 1098, 1100, approved in State ex rel. Weddle v. Trimble, 331 Mo. 1, 52 S. W. (2d) 864, 867; Graefe v. St. Louis Transit Co., 224 Mo. 232, 264, 266, 123 S. W. 835; Behen v. St. Louis Transit Co., 186 Mo. 430, 441, 85 S. W. 346; Murray v. St. Louis Transit Co., 176 Mo. 183, 190, 75 S. W. 611.]

This court in the Caylor case, supra, refused to follow all of its previous rulings in the Sing case, supra, and so far as the Sing case conflicts with the ruling in the Caylor case and in this case, it is overruled.

The judgment of the trial court is reversed and the cause remanded.

PER CURIAM:—The foregoing opinion by STURGIS, C., in Division One, is adopted as the opinion of the Court en Banc. All concur, except *Hays, J.*, absent.