HARRY A. TROWER v. MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, a Corporation, Appellant.—No. 39081.—184 S. W. (2d) 428.

Division One, December 1, 1944.

Rehearing Denied, January 2, 1945.

*Carl S. Hoffman* and *Cooper, Neel, Sutherland & Rogers* for appellant.

*C. O. Inman, A. C. Popham* and *Trusty & Pugh* for respondent.

760

VAN OSDOL, C.—Action for personal injuries. Plaintiff's case was based on alleged specific negligence under the last clear chance doctrine of Kansas. A jury returned a verdict for $65,000, and defendant has appealed from the consequent judgment.

Errors of the trial court are assigned (1) in overruling defendant's motion to declare a mistrial, (2) in refusing defendant's request for a peremptory instruction in the nature of a demurrer to the evidence, (3) in giving Instruction Number 1 at the instance of plaintiff, (4) in the admission of evidence, and (5) in overruling defendant's objection to the argument of plaintiff's counsel. And (6) defendant contends the award was excessive.

Plaintiff (respondent) was injured when defendant's gasoline-electric train (one coach with motor, seats for passengers, and mail or baggage space included) and a Packard sedan, owned and driven by Russell M. Riggins, collided at a railroad crossing south of Pittsburg, Kansas. Riggins and wife, and their guests, plaintiff and wife, were returning from Kansas City to their homes in Bartlesville, Oklahoma. Plaintiff was in the front seat of the automobile to the right of the driver and the ladies were seated in the rear. All of the occupants of the automobile were injured. We will make further reference to the evidence in the further course of this opinion. This

court has heretofore reviewed a case based upon the same cause of action. See Trower v. Missouri-Kansas-Texas R. Co., 347 Mo. 900, 149 S. W. 2d 792, wherein the facts and circumstances of the casualty as shown in evidence in the trial of that case are fully stated.

■ (1) June 7, 1943, a jury of twelve was regularly selected to try the case at bar from a panel of eighteen qualified petit jurors, or veniremen, as provided in Section 720, R. S. 1939, Mo. R. S. A., sec. 720; the jury was sworn to try the cause; the opening statements were made; and the trial passed to the morning of June 8th, when, court having convened, a witness was sworn who answered one question, "Mr. Palmer, you live in Kansas City? Yes, sir." It was then noticed that one juror, Estes, was missing from the jury box. The trial court determined that the missing juror would not appear for further service, and called three additional petit jurors; directed the parties to examine on *voir dire*; accorded each party one peremptory challenge; and impaneled the remaining petit juror, Boresow, in lieu of the missing juror, Estes. The jury as then constituted was resworn to try the cause, and opening statements ■ were again made. Defendant strenuously objected to the trial court's procedure, stating as specific grounds for his objection, and for a motion to declare a mistrial, "said jury was not selected from a panel as required by the Statutes of the State of Missouri and is not a jury selected from a panel of veniremen as is required under the laws of the State of Missouri, and further that it deprives the defendant of trial by a jury as is" guaranteed by constitutional provisions.

Defendant did not object to the trial court's declaration that the juror, Estes, would not further appear, and did not contend the three additional petit jurors, including the juror Boresow, were not qualified; nor was any contention or showing made that the jurors, or any of them, who finally constituted the trial jury were prejudiced. The verdict for plaintiff was a majority verdict, nine jurors, including the juror Boresow, concurring.

It is the position of defendant that, inasmuch as there is no statute of our state governing procedure when a sworn juror becomes incapacitated, the common law applies, and the only course open to the trial court was to declare a mistrial, discharge the remaining jurors and impanel a new panel of eighteen qualified veniremen and preserve the right of the parties to make peremptory challenges, first the plaintiff, then the defendant. Plaintiff asserts there was no violation of any constitutional or statutory provision; there was no error, or no prejudicial error, in substituting the juror Boresow; and defendant did not sufficiently preserve the question for review.

In view of our ruling, infra, on the assignment of error (3), it is not necessary to consider the contentions of the parties upon the instant question, other than to say that the right to trial by a jury (twelve in number), which has been preserved by constitutional pro-

vision, has and should always be protected by the courts. In a civil action where there has been a departure from the established practice of selecting a trial jury from a panel of eighteen qualified petit jurors, which departure has resulted in injury or injustice to a party, the appellate court will not hesitate to award a new trial. Kidd v. Chicago, R. I. & P. Ry. Co., 310 Mo. 1, 274 S. W. 1079. And, in our state where there is no statutory provision for the impaneling and swearing of an additional or alternate (trial) juror or jurors, it should be considered proper procedure (when a juror becomes incapacitated after a jury has been sworn to try the cause) to re-impanel petit jurors, eighteen in number, qualified by *voir dire* examination and challenges for cause, and to then accord the parties, plaintiff and defendant, the right of making peremptory challenges in the respective order and of the number as provided by statute (Section 720, supra). Norvell v. Deval, 50 Mo. 272; Miller v. Engle, 185 Mo. App. 558, 172 S. W. 631.

(2) As we have said, a former case was based upon the same cause of action as the instant action. After the trial of the former action in the circuit court of St. Louis, a jury returned a verdict for defendant, and defendant appealed from an order granting plaintiff a new trial. This court affirmed the trial court's order and remanded the cause. Trower v. Missouri-Kansas-Texas R. Co., supra. Thereafter a voluntary nonsuit was entered in that case, and the instant action instituted in the circuit court of Jackson County. We believe the import of the opinion in the review of the other case, as it bears upon the law of the case at bar, is not affected by the nonsuit and the institution of this (another) action. "It suffices to say that such opinion is the law of the case, unless the pleadings have been (changed) amended so as to introduce new issues, or the evidence on the retrial is substantially different, from the evidence considered upon the vital questions at the former hearing here. It should be further stated, however, that even if there is no substantial difference in pleadings and proof upon the retrial, yet if this court upon second appeal finds that it was in error upon the first hearing, it not only has the power and right to correct such error, but it would be the duty of the court so to do, in the interest of justice. This is true whether we erred in the principles of law declared, or erred in the determination of what were the real facts of the case." Davidson v. St. Louis-San Francisco R. Co., 301 Mo. 79, 256 S. W. 169.

In the former case, in addition to negligence of defendant under the last clear chance doctrine of Kansas, primary negligence of defendant was specifically alleged by plaintiff and submitted by the trial court to the jury; but in the review of the former case (as herein), in ruling upon the question of whether the plaintiff made a case, this court considered solely the theory of liability under the last clear chance doctrine of Kansas (347 Mo. at page 911).

Contentions of defendant (appellant) in the review of the former case necessitated examination of authorities upon the question of whether the last clear chance doctrine of Kansas applied in a case of ''discoverable peril'' (the defendant having a duty to be vigilant). This court ruled that (under the circumstances of the case) the last clear chance doctrine of Kansas was not limited to ''discovered peril.'' On the question of the submissibility of plaintiff's case the court said, ''We think there was evidence from which the jury could find that plaintiff by his negligence had placed himself in a position of danger; that his negligence had ceased; that defendant saw plaintiff in a position of helpless peril and danger or by the exercise of ordinary care should have seen him in such position; that it was the engineer's duty to keep a lookout ahead; that by the exercise of ordinary care in applying the brakes the engineer had a last clear chance to avoid injuring plaintiff; that he failed to exercise such due care; and that as a result of such failure the plaintiff was injured.'' (347 Mo. at pages 912-3.) We have examined the statement of facts as made in the opinion. We have found no substantial difference in the evidence introduced in the two trials of the cause, in so far as such difference would affect a vital issue.

It can be ascertained from the evidence introduced in the trial of both cases that, had the automobile (200 feet north of the crossing) continued on at the rate of fifty or fifty-five miles per hour from the time plaintiff first saw the train (250 feet east of the crossing), or even at the rate of thirty miles per hour, the automobile would have passed safely over the crossing, although the speed of the train were not decelerated from its estimated rate of thirty to thirty-two miles per hour. It is contended by defendant that plaintiff was negligent in failing to utilize an opportunity to cause the driver to continue on across the crossing to safety; further, that the act of the driver in applying the brakes and slowing the speed of the auto-mobile was negligent (see Goodman v. Kansas City, Merriam & Shawnee R. Co., 137 Kan. 508, 21 Pac. 2d 322) and, since plaintiff warned the driver of the presence of the train, and admitted that ''he (plaintiff), at no time, told the driver to go on and to not apply the brakes,'' the driver acted at the instance and direction of plain-tiff; so (it is urged) the negligence of the driver should be imputed to plaintiff; and, defendant contends, the evidence fails to show the position of defendant's train when the automobile, after the brakes were applied, reached a point where it could be determined that a collision was inevitable and the plaintiff in inescapable peril. These contentions seem not to have been urged in the appeal of the former case; but we will endeavor to determine if there is merit in them.

Plaintiff should not be held to have been negligent, under the circumstances, in warning the driver of the approach of the train; and, we believe, the words ''Look out (Russell), there's a train'' did not

express a suggestion that the brakes should be applied and the speed of the automobile slackened. Now, it is clear from the evidence that plaintiff felt and saw that the brakes were applied and the speed of the automobile reduced, but it should not be said as a matter of law that plaintiff, under the circumstances, was negligent in failing to direct the release of the brakes. In weighing the question of whether plaintiff was negligent in failing to direct the driver to release the brakes and to speed on over the crossing in such an emergency, regard must be had to the possibility that by interfering the plaintiff would have increased rather than diminished the danger. Comment on Clause (d), sec. 495, Restatement of the Law of Torts. Nor should it be held that plaintiff's failure to direct the driver to speed on over the crossing was the manifestation of such a sanction of the act of the driver in applying the brakes as would make his act the act of plaintiff. Smith v. St. Louis-San Francisco R..Co., 321 Mo. 105, 9 S. W. 2d 939, and cases therein cited; see also Lynch v. Missouri-Kansas-Texas R. Co., 333 Mo. 89, 61 S. W. 2d 918. We bear in mind that plaintiff was a guest of the driver; plaintiff did not expressly sanction the driver's use of the brakes. Our case differs from the case of Landrum v. St. Louis, I. M. & S. Ry. Co. (Mo. App.), 178 S. W. 273, cited by defendant, wherein a plaintiff, a guest, told the driver "it was all right" to pass onto the crossing.

Defendant has cited the case of Buchhein v. Atchison, Topeka & Santa Fe Ry. Co., 147 Kan. 192, 75 Pac. 2d 280, as controlling authority in support of the contention that plaintiff was never in inescapable peril. The decision of that case turned upon a finding that plaintiff's contributory negligence ▇▇▇ in failing to look and warn continued up until the last moment when he might have been saved. However, a paragraph was included in the opinion, 147 Kan. at page 196, which appears to us as not necessary to the decision, "Moreover, if the trial court had assumed that plaintiff's contributory negligence had ceased, . . . the fact still remains that plaintiff's evidence did not bring him under the doctrine of last clear chance. His own testimony clearly showed the car was never entrapped or in a predicament from which it could not extricate itself. The motor had not stopped, the car was not stalled, but on the contrary . . . the car picked up speed after they shifted gears. Under the evidence the doctrine of last clear chance was not applicable. (Tarter v. Missouri-Kansas-Texas R. Co., 119 Kan. 365, 367, 239 Pac. 754; Jamison v. Atchison, T. &. S. F. Ry. Co., 122 Kan. 305, 308, 252 Pac. 472; Bazzell v. Atchison, T. & S. F. Ry. Co., 133 Kan. 483, 300 Pac. 1108.)" We have examined the cases cited in the quoted paragraph—in none was the plaintiff a guest who might have been reasonably considered dependent, under the circumstances, upon the exercise of care by a driver. It is not clear from the opinion of the Buchhein case that the reviewing court considered the legal relation the plain-

tiff bore to the driver was not such as would make his acts the acts of plaintiff. In this connection, examine Farmer v. Central Mutual Ins. Co., 145 Kan. 951, 67 Pac. 2d 511.

In our case, the plaintiff's negligence came to an end upon his warning to the driver of the approach of the train. Plaintiff's position in the emergency created was not due to his own (negligence) application of the brakes, nor to an express sanction of the driver's act in the application of them. We reassert the ruling (347 Mo. at page 912) as made in the review of the former case, "after he (plaintiff) warned the driver of the presence of the train, it could not be said that he was thereafter guilty, as a matter of law, of any contributory negligence which continued up to the moment of his injury." It does not appear to us that the court in reviewing the former case erred in applying a principle of law, or erred in the determination of the real facts, in reviewing the question of the submissibility of plaintiff's case, and the former opinion is the law of the case upon the question. Morris v. E. I. Du Pont de Nemours & Co., 346 Mo. 126, 139 S. W. 2d 984; Crossno v. Terminal R. Assn. of St. Louis, 333 Mo. 733, 62 S. W. 2d 1092; Davidson v. St. Louis-San Francisco R. Co., supra. We hold the trial court did not err in refusing to give the peremptory instruction tendered by defendant.

■ (3) Instruction Number 1, the main instruction given at the instance of plaintiff, is quite long; its printing required a little more than four pages of the abstract of the record. The instruction is divided into eight numbered paragraphs, and the jury is referred to various of the numbered paragraphs "below" or "above" in order to ascertain the law of the case as it should apply to the facts hypothesized. The instruction is complex, argumentative and repetitious. Instructions should state the issues as briefly and definitely as may be, and should not be argumentative. We are constrained to believe the jury might reasonably have thought, after a reading of Instruction Number 1, that, in the opinion of the trial judge, the verdict should be for plaintiff.

Special and unnecessary emphasis is placed upon defendant's duty "under the law . . . to maintain a reasonable lookout . . . for anyone on the highway in peril from the train, as herein explained, and to exercise ordinary care in doing so for the purpose hereafter explained." And the court continued paragraph (2) of the instruction, "If you find that Mr. and Mrs. Trower were in inescapable peril, as explained in paragraphs numbered 3 and 4 hereof, and the danger of the collision existed as explained below, and if the operator of the train did not discover such peril until too late to avoid the collision by the care required, but find from the evidence that by the kind of lookout above explained, the operator of the train could or should have discovered such danger in time to have thereafter slowed or stopped the train and prevented the collision by the care and means

explained below, then the company would be just as negligent as if the operator had actually seen and discovered and realized such peril in time to have thereafter so slowed down or stopped and avoided the collision as explained below in this instruction.

"(3) Now on the issue of what would be inescapable peril as to Mr. and Mrs. Trower, or peril which they could not get out of ▮▮▮▮ by ordinary care, and when and how it could legally arise and exist, if you believe from the evidence that when the automobile in which Mr. and Mrs. Trower were riding was about 200 feet north of the crossing Mr. Trower discovered the approach of the train and thereupon warned Mr. Riggins thereof and that Mr. Riggins applied the brakes and used the brakes in an effort to prevent a collision and injury, and if you find from the evidence that when Mr. Riggins so applied the brakes and was so using them, there arose and existed a situation of dangerous peril of injury to Mr. and Mrs. Trower and they were in an emergency and the actions, appearances and speed of the automobile and train and the surrounding conditions and circumstances in evidence were such as to make it reasonably apparent that a collision *most likely* (our italics) would take place at the crossing and they would be injured unless the train was thereafter slowed or stopped, as hereafter explained.

"(4) And if you so find from the evidence the foregoing in paragraph 3 and find from the evidence that after such conditions and situation arose and existed there was nothing further Mr. and Mrs. Trower by reasonable care could have done towards escaping peril of injury, then you are instructed that such peril was in law inescapable peril, or peril Mr. and Mrs. Trower could not escape from or get out of, and any prior negligence of Mr. or Mrs. Trower would cease as explained in paragraph (5)."

Of the duty of defendant, the jury was further instructed in paragraphs (6) and (7) of the instruction,

"(6) And if you find from the evidence the facts to be as set forth in the above paragraphs numbered 3 and 4, and believe and find from the evidence that by using ordinary care in the keeping and maintaining of the kind of lookout required of the railroad, as explained in paragraph (2), above, the operator of the motor train could or should have seen the automobile, and by such care in such lookout could or should have seen and realized from such actions, appearances and speed of the automobile and all the facts and circumstances in evidence and the surrounding conditions that such peril existed and that a collision would *most likely* (our italics) take place . . . if the train continued on at the speed it was traveling; and if you so find the foregoing from the evidence.

"(7) And if you further find from the evidence that by exercising such ordinary care in the maintaining of such lookout as explained above the operator of the train could or should have so discovered or

realized such peril and danger of a collision, as above explained; in time, by the use of ordinary care by him in the use of the braking appliances of the motor train, and with reasonable safety to the train and all persons on the train, for him to have thereafter slackened the speed of the train enough to have avoided the collision, or to have, thereafter stopped the train in time to have avoided the collision, and that he thereafter failed to use such ordinary care so to do, and you are instructed that, under the law the railroad company was negligent as to Mr. and Mrs. Trower.''

In our examination of defendant's contention (2) we have reasserted the ruling that, after plaintiff warned the driver of the presence of the train, it could be reasonably found that plaintiff was in helpless peril. But in the examination of the instant (3) assignment of error we must make a reapproach, having in mind the duty of defendant. Of course, it was proper to advise the jury of the engineer's duty to keep a lookout and that the engineer had the duty to act when he saw or should have seen plaintiff in helpless peril. But negligent failure ''to maintain a reasonable lookout'' (primary negligence) was not the basis of plaintiff's cause of action. A decisive question was—when would an engineer in the exercise of vigilance discover plaintiff's position of helpless peril. Leinbach v. Pickwick-Greyhound Lines, 138 Kan. 50, 23 Pac. 2d 449. Failure to maintain a lookout was not a fact essential to the subjection of defendant to liability under the pleadings, and the circumstances in evidence; it was material only because a defendant, having such a duty to be vigilant, although he does not see, may nevertheless have a duty to exercise a last clear chance. Our court has expressed this view in a case involving our humanitarian rule. Mayfield v. Kansas City Southern R. Co., 337 Mo. 79, 85 S. W. 2d 116. ''In other words, in spite of a failure to keep a lookout the humanitarian doctrine may come into operation, not because that is in itself humanitarian negligence, but because we have, *at places where there is a duty to keep a lookout,* extended the humanitarian rule to discoverable as well as discovered peril.'' (337 Mo. at page 91.) Addressing ourselves now to this latter phase of defendant's duty—while the jury would be justified under the evidence in finding the plaintiff to have been in helpless peril after, he had warned the driver, defendant's engineer could not know that plaintiff was the guest of the driver. Defendant's engineer was required to act upon those appearances which he saw, or should have seen. The engineer was not, in the exercise of reasonable care, required to take extreme measures to prevent the train from reaching the path of the automobile, until it became evident the automobile would not or could not stop, or pass on over the crossing, but would inevitably come in contact with the train. Mourning v. Kansas City Rys. Co., 110 Kan. 417, 204 Pac. 721; State ex rel. Thompson v. Shain et al., 351 Mo. 530, 173 S. W. 2d 406. Referring again to para-

graph (6) of Instruction Number 1, it is hypothesized "And if you find . . . that by using ordinary care in the keeping . . . of the kind of a lookout . . . the operator . . . could or should have seen . . . and realized . . . that a collision would most likely" take place if the train continued on at the speed it was traveling. Note that in paragraph (3) of the instruction [to which the jury was referred in paragraph (6)] the words "reasonably apparent" were used in connection with the clause "that a collision most likely would take place at the crossing . . . " We believe the words "would most likely," so used, fall short of conveying the meaning of actuality of the word "would"; that is—the clause "that a collision would most likely take place" conveys a meaning of lesser degree of actuality of helpless peril than the clause "that a collision . . . would take place" (if the train continued on at the speed it was traveling). We recognize the superlative "most" to have as one meaning, "in the greatest or highest degree or to the greatest extent." Webster's New International Dictionary, Second Edition. We are reminded that in opinions of this court language has been used, treating the shade of meaning of the word "likely" in its use in an instruction, in which the word is said to be of lesser strength than the words "reasonably certain" (Brown v. Forrester & Nace Box Co. (Mo. Sup.), 243 S. W. 330); and, in its use in interrogating a witness on a question of what results "are likely" to follow a plaintiff's injury, it is said to be equivalent to the words "reasonably expected" and "there is but a slight shade of difference between 'reasonably expected' and 'reasonably certain.' " Garard v. Manufacturers' Coal & Coke Co., 207 Mo. 242, 105 S. W. 767. And, in discussing a defendant's duty under our humanitarian rule, it has been stated, "defendant's duty to act always begins at the point where he sees, or by the proper degree of care should see, that there is *likely* to be a collision unless he uses available means to avoid it." (Our italics.) Robb v. St. Louis Public Service Co., 352 Mo. 566, 178 S. W. 2d 443. Such language is not to be construed as authorizing the use of such modifying words in instructing a jury of a defendant's duty under the last clear chance doctrine of Kansas. We cannot approve such use.

Considering the length of Instruction Number 1; its argumentative character; the unnecessary emphasis and repetition of its language relating to defendant's duty to maintain a lookout; and the use of the modifying words, "most likely," which we have italicized, it seems clear to us that (laymen) the jury could reasonably have understood that the instruction authorized them to make a finding for plaintiff upon the evidence tending to show that defendant's engineer failed to maintain a lookout antecedent to the time when, under the evidence, an engineer in the exercise of vigilance would have discovered plaintiff's helpless peril. The contention of plaintiff that,

by tendering Instruction 8-A, defendant adopted the theory of Instruction Number 1 is without merit in respect to the faults of Instruction Number 1 which, we hold, made it prejudicially erroneous.

It is not necessary to consider the remaining contentions of defendant. The cause should be reversed and remanded.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.