NADINE MURPHY v. ATCHISON, TOPEKA and SANTA FE RAILROAD COM-
PANY, a Corporation, Appellant.—No. 39044.—197 S. W. (2d)
632.

Court en Banc, October 14, 1946.

Rehearing Denied, November 11, 1946.

644

*Cyrus Crane, John H. Lathrop, Winston H. Woodson* and *Sam D. Parker* for appellant.

*Robert M. Murray* and *Walter A. Raymond* for respondent.

BARRETT, C.—In this reassigned cause Nadine Murphy was awarded $10,000.00 for her personal injuries and $10,000.00 for the death of her husband, William "Pat" Murphy. The plaintiff's injuries and her husband's death resulted when the Chevrolet automobile in which they were riding as guests was struck by a Santa Fe train on the grade crossing at Edgerton, Kansas, on the afternoon of July 1, 1942. Therefore, as the parties agree, the cause is governed by and must be adjudicated according to the laws of Kansas. State ex rel. Thompson v. Shain, 351 Mo. 530, 540, 173 S. W. (2d) 406, 410.

Here, as in its companion case, Mary Louise Murphy v. Atchison, T. & S. F. Ry. Co., 353 Mo. 697, 183 S. W. (2d) 829, the essential outline facts are as follows:

Mary Louise Murphy, her husband, Glenn Murphy, and her brother-in-law, Pat Murphy, and his wife, Nadine, were riding in Glenn's 1941 Chevrolet business coupe on their way to the home of the Murphys' father and mother. Mary Louise was driving. The car was in excellent mechanical condition and Mary Louise was an experienced driver. Nadine sat next to the driver and her husband sat to her right on the seat, while Glenn sat on the raised floor back of the seat.

When the car approached the Santa Fe tracks, which are described as running north and south, though they intersect ▮▮▮ the east-west road at an angle of sixty-one degrees and ten minutes, Mary Louise stopped the car about twenty-five feet from the nearest or west main line rail until a freight train passed over the crossing on the east track. There was a large window in the door of the car and a smaller window just to the rear of the seat and Mary Louise said that because of the angle of the crossing and the manner in which they sat in the car it was necessary for her to look over her shoulder and through the small window to see down the railroad track to the south. As the caboose of the freight train passed over the crossing Mary Louise put the car in low gear and started forward, shifting into second gear about fifteen feet from the west rail.. While the automobile was upon the track it was struck by the second section of the Santa Fe's No. 8 passenger train. The Murphy brothers were killed and Mary Louise and Nadine were seriously injured. West of Edgerton there had been a service application of the brakes and the speed of the train had been reduced to eighty miles an hour for an eighty mile an hour curve. The next curve was a seventy or seventy-five mile an hour curve and there had been a second service application of the brakes and the train had been steadied at seventy miles an hour and was traveling at that speed when it struck the car upon the crossing. One of the plaintiff's expert witnesses testified that the speed of the train could have been slackened from 70 miles an hour to ''40, close to 35 in a distance of 400 feet.'' A second expert witness gave it as his opinion that the speed of the train could have been slackened from 70 miles an hour to between 25 and 30 miles an hour by an emergency application of the air brakes, in the distance of 350 to 400 feet. Another of the plaintiff's witnesses determined, to the rhythm of the secondhand on a watch and after several tests, that the Chevrolet coupe could be backed off clear of the track with the front bumper extending over the inside or east rail in ''from a second and a half to a second and three-quarters, not over two seconds.''

▮▮ In this as in the companion case it is sought to base the railroad's liability upon the last chance doctrine of Kansas, particularly as the doctrine is set forth in Trower v. M.-K.-T. R. Co., 347 Mo. 900, 909-911, 149 S. W. (2d) 792, 796-797; 353 Mo. 757, 184 S. W. (2d) 428, and the Kansas cases there cited and discussed. In the companion case Mary Louise, the driver, was the plaintiff suing for her own injuries and for Glenn's death. In that case it was held that there was no liability on the part of the railroad because her own evidence demonstrated that she was guilty of concurrent and continuing contributory negligence, which prevents recovery under the last chance doctrine of Kansas. Dyerson v. Union Pac. R. Co., 74 Kan. 528, 536-537, 87 Pac. 680, 683; Goodman v. K. C. M. & S. R. Co., 137 Kan. 508, 21 Pac. (2d) 322. In this case, however, there is the sig-

nificant and distinguishing circumstance that the plaintiff, Nadine, and her husband were guests in the automobile. Because of that fact the respondent argues that their conduct and the circumstances as applied to them may not be gauged by the standards applicable to Mary Louise and her cause of action. It is urged, since she and her husband were guests, that any concurrent or contributory negligence on the part of the driver, Mary Louise, may not be imputed to them. Clark v. Missouri Pac. R. Co., 115 Kan. 823, 224 Pac. 920; Bradshaw v. Payne, 111 Kan. 475, 207 Pac. 802. It is stated that it must be made to appear that there was a failure on her part to exercise reasonable care and that such failure was a legally contributing cause of the injuries complained of before her action may be defeated. Farmer v. Central Mut. Ins. Co., 145 Kan. 951, 955, 67 Pac. (2d) 511; Link v. Miller, 133 Kan. 469, 300 Pac. 1105; Denton v. M.-K.-T. Ry. Co., 97 Kan. 498, 155 Pac. 812. The appellant railroad contends, nevertheless, that Nadine, as a guest, was guilty of contributory negligence in failing to warn Mary Louise of the approaching train, that her negligence in this respect was the proximate cause of the collision, and, therefore, the railroad is relieved of liability under the law of Kansas. Shepard v. Thompson, 153 Kan. 68, 74, 109 Pac. (2d) 126; Rathbone v. St. Louis & S. F. Ry. Co., 113 Kan. 257, 214 Pac. 109. But in the view we now take of the case it becomes unnecessary for us to determine whether the circumstances were such that the guests were guilty of contributory negligence within the meaning of the law of Kansas. Compare: Darrington v. Campbell, 150 Kan. 407, 94 Pac. (2d) 305; Packer v. Fairmount Creamery Co., 158 Kan. 580, 149 Pac. (2d) 629 and Curtiss v. Fahle, 157 Kan. 226, 139 Pac. (2d) 827. By eliminating this question it also becomes unnecessary for us to construe the Buchhein and Christie cases and determine whether they in fact impute the host's negligence to the guest or whether, in fact, what they say relating to this subject is mere dicta. Buchhein v. Atchison, T. & S. F. Ry. Co., 147 Kan. 192, 195-196, 75 Pac. (2d) 280; Christie v. Atchison, T. & S. F. Ry. Co., 154 Kan. 713, 716, 121 Pac. (2d) 208; Trower v. M.-K.-T. R. Co., 353 Mo. l. c. 764, 184 S. W. (2d) l. c. 431-432. Furthermore, in the view we take of the case, it is not necessary to decide whether, under the law of Kansas, there may be more than one proximate cause of an injury. McRae v. Missouri Pac. R. Co., 116 Kan. 99, 225 Pac. 1032.

Two of the essential elements—absolutes—of the last chance doctrine of Kansas are (1) that the plaintiff must have been in helpless or inextricable peril and (2) thereafter the defendant could have avoided the injury complained of. Tarter v. M.-K.-T. Ry. Co., 119 Kan. 365, 239 Pac. 754. ''This doctrine can be invoked in negligence cases only where the party relying upon it has by his own prior negligence gotten himself into a predicament from which his subsequent diligence will not avail to extricate him without injury or damage

through the act or delict of another party, but where such other party has a fair opportunity—a last clear chance—to avert or minimize the accident, injury or damage, by the exercise of reasonable diligence after the negligence of the first party has ceased." Jamison v. Atchison, T. & S. F. Ry. Co., 122 Kan. 305, 308, 252 Pac. 472, 473; State ex rel. Thompson v. Shain, supra. The evidence is construed most favorably to the plaintiff, but even so the presence of these two elements must be demonstrated and made to appear, in guest cases as well as in actions in which the host or driver is plaintiff. Anthony v. Costello Motor Co., 149 Kan. 690, 692, 88 Pac. (2d) 1025; Trower v. M.-K.-T. Ry. Co., supra. And, "The burden of proof is on the plaintiff as to this issue." Bollinger v. St. Louis-S. F. Ry. Co., 334 Mo. 720, 732, 67 S. W. (2d) 985, 991.

In this case Nadine said that as the automobile was stopped about twenty-five feet from the nearest rail she could not see south down the track because of the station. As the automobile moved forward both she and her husband were looking to the south but she could not see beyond him until he would lean forward in the seat. Finally, when the front of the automobile was "just about over the first rail" they both leaned forward "and he screamed, then he braced himself in the car and leaned back and braced himself, and I looked up" and the car stopped in between the rails. It was then, for the first time, she saw the train, the front of it, in her "best estimate" and it was "in front of the station or about there." Admittedly the station is less than one hundred feet from the crossing and the train at seventy miles an hour was traveling 102 feet a second. So when Nadine, first saw the train in front of the station and while the wheels of the car were about over the first rail it was not possible thereafter for the speed of the train to have been slackened and the collision avoided and consequently, under her evidence, there could not have been a cause of action under the last chance doctrine of Kansas. Caylor v. St. Louis-S. F. Ry. Co., 332 Mo. 851, 859, 59 S. W. (2d) 661, 664.

Nor does she rely upon what she saw and the circumstances as they existed at the time she first saw the train as establishing the inextricable peril of herself and her husband and the ability of the railroad thereafter to slacken the speed of the train and avoid the injury. She relies upon the circumstances as they appeared from the viewpoint of Mary Louise and as she detailed them. And Mary Louise said that as the automobile moved forward towards the track, at a speed of five or six miles an hour, she was looking south down the track. Her view down the track was first obstructed by the station, then by the bay window ■■■ on the front of the station and then by the water tank which was 318 feet from the crossing. When it was first possible for her to see down the track, beyond the water tank, "The front bumper was just over the first rail of the first track."

Pat screamed and ''the bumper and right wheel of the car was right over the first . . . rail, and I saw this engine coming . . . I would say about 100 or little over 100 feet south of the water tank. . . . I slammed on my brakes the minute I saw the passenger train and heard him scream, and to the best of my recollection, I put the car in reverse and tried to back off the rail. . . . to the best of my memory, I started to back off.'' She said that when the car stopped the front wheels ''would be about in the center of this west track.''

Upon this evidence and the testimony of her expert witnesses the plaintiff hypothesized the railroad's liability upon ''the single claim that when said automobile in which plaintiff was riding came to a stop upon the railroad track of defendant, . . . plaintiff was in a position of helpless and inescapable peril of being injured . . . and the defendant's engineer . . . could have . . . known thereof, in time thereafter, . . . to have slowed said train . . . so as to have enabled the driver of said automobile to have driven said automobile to a position of safety off of said track . . .''

But whether the situation is seized upon and the plaintiff's case viewed from the time the automobile came to a stop upon the track, or whether it is viewed from the time Mary Louise first saw the train with the bumper and right wheel of the car over the first rail, the circumstances do not permit a finding of the two essential elements of the plaintiff's and her husband's inextricable peril and the defendant's ability thereafter to slacken the speed of the train and thus avoid the collision. As we have pointed out, it is not possible to seize upon and use the circumstances as Nadine saw them for it was then too late for the speed of the train to have been effectively slackened. Therefore she seizes and relies upon the circumstances as they were made to appear from Mary Louise's viewpoint to establish both the peril and the railroad's last clear chance to avoid the collision. When Mary Louise first saw the train it was then 418 feet from the crossing ''or little over 100 feet south of the water tank.'' Assuming that the train was at or near the water tank, 318 feet away, by the time and when the automobile ''came to a stop upon the railroad track'' her proof precisely shows and there is no other evidence or circumstance upon the subject that the automobile could be backed clear of the track in from ''a second and a half to a second and three-quarters, not over two seconds.'' And Mary Louise said that she ''started to back off'' and plaintiff's counsel now insist that she was backing off. The train traveling seventy miles an hour (102 feet a second) was then something over three seconds away from the crossing. Therefore, seizing upon the situation at the time when the automobile was stopped upon the track, the circumstances do not show the plaintiff and her husband then in helpless or inextricable peril for by her positive evidence there was a margin of safety or a period of time in which the

automobile, upon which she relies as the means to move them off the track, could have been and was backing to safety. As in the companion case, her hypothetical questions required an emergency application of the train's brakes 300 or 350 feet from the crossing or at seventy miles an hour (102 feet a second) two and ninety-seven hundredths or three to three and one-half seconds from the crossing. After the expiration of a second and a half (in which to place them in inextricable peril) it is then too late for the train to slacken its speed and avoid the collision for by that time it is less than two seconds away. The circumstances are no more favorable if seized upon and viewed from the time Mary Louise first saw the train for it was then over 418 feet from the crossing and the automobile and its occupants could not be in peril, under their evidence, until the expiration of a second and a half or two seconds and again, applying the calculations of the plaintiff's experts, it would be too late. Under the circumstances relied upon her case clearly falls within the law and the facts as stated in Bollinger v. St. Louis -S. F. Ry. Co., 334 Mo. 720, 727-732, 67 S. W. (2d) 985, 989-991.

This is not to deprive the plaintiff of the right to have the jury draw contrary inferences or find the facts from reasoning upon the evidence (Thayer, Preliminary Treatise On Evidence, pp. 193-194) because here there is no room for inferences; the plaintiff's evidence specifically and precisely shows the situation in time and space and there is no other evidence upon which the jury may reason. The case is then comparable to Dearing v. Wichita R. & L. Co., 130 Kan. 142, 285 Pac. 621 and Jamison v. Atchison, T. & S. F. Ry. Co., 122 Kan. 305, 252 Pac. 472, even though they are not guest cases. Eubank v. K. C. Ter. Ry. Co., 346 Mo. 436, 142 S. W. (2d) 19; Fitzgerald v. Thompson (Mo. App.), 184 S. W. (2d) 198 and Metropolitan Street Ry. Co. v. Arnold, 67 Kan. 260, 72 Pac. 857, though not guest cases, present situations in which the jury may reason upon the circumstances presented and find the plaintiffs in inextricable peril and the ability of the defendants thereafter to avoid the injury within the meaning of the law of Kansas. And the facts, as the jury could find them, in the Trower cases, in our opinion, demonstrate a typical last clear chance guest case with respect to these essential elements. But here the plaintiff specifically and definitely proves every fact and circumstance relied upon and however favorably construed they do not permit an inference or finding of inescapable peril and subsequently the railroad's ability to avoid the injuries complained of. The evidence in this case demonstrates the absence of these two essential elements just as the almost identical circumstances in the companion case (353 Mo. 697, 183 S. W. (2d) 829) demonstrated that Mary Louise was guilty of concurrent and contributory negligence under the last chance doctrine of Kansas.

The judgment, therefore, is reversed.

654

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court en Banc. *Douglas, Hyde* and *Leedy, JJ.*, and *Tipton, C. J.*, concur; *Ellison, J.*, dissents in separate opinion; *Gantt, J.*, not sitting; *Clark, J.*, absent.

ELLISON, J. (dissenting).—I respectfully dissent. Sketchily reviewing the facts stated in the principal opinion, the undisputed evidence showed that the railroad double tracks bore northeasterly and intersected the east and west public highway at an acute angle of 61 degrees on the south side, with the railroad depot inside that angle. The depot and its bay window, and a water tank further south, obstructed an eastbound motorist's view of a northbound train approaching from beyond those structures, until his line of vision had cleared them. And even then, to see the train the motorist would have to look back southwest over his right shoulder. The plaintiff's husband was a large man, 6 feet tall and weighing 230 pounds. He was seated on the right or south side of the automobile, nearest the train. The driver was on the left or north side of the seat. And the plaintiff was between the two, with her view southward obstructed by her husband unless he would lean forward. Both the plaintiff and her husband were riding as guests in the automobile.

The undisputed evidence also shows the engineer of the oncoming train did not see the automobile at all, and the fireman did not see it until the locomotive was 250 feet from the highway crossing, with the result that the train continued at an undiminished speed of 70 miles per hour (102 feet per second) until after the collision occurred. The plaintiff's evidence was that the automobile had previously stopped west of the tracks awaiting the passage of a southbound freight train, and then had proceeded eastward at 5 or 6 miles per hour until the front wheels of the automobile were over the first rail of the track on which the train was bearing down. During that time the plaintiff and her husband had been looking to the south. Her husband saw the train first, screamed and leaned back and braced himself. Because of her obstructed view the plaintiff did not see it until it was about opposite the depot less than 100 feet away. The driver of the automobile saw the train just after the husband screamed. She slammed on the brakes, and to the best of her recollection started to back off the track but did not get in the clear.

The driver testified the locomotive was 100 feet or more south of the water tank when she first saw it, and it is agreed the water tank was 318 feet south of the highway crossing, thereby fixing the distance of the train at 418 feet or more. Plaintiff presented two expert witnesses, one of whom said that at the admitted speed of 70 miles per hour, or 102 feet per second, by a prompt application of the emergency brakes the speed of the train could have been reduced to 40 or 30 miles per hour in a distance of 400 feet. The other expert said

the speed could have been reduced to 25 or 30 miles per hour in 350 to 400 feet. A third expert introduced by the plaintiff testified from experiments that the automobile could have been backed off the track into the clear in 1-½ to 2 seconds.

In deciding the case, the principal opinion properly endeavors to view the facts in the light most favorable to plaintiff, since she prevailed below and the defendant appealed, although the defendant railroad had substantial evidence to the contrary. On that theory the opinion concedes the train was 418 feet away when the driver first saw it, and *assumes* it was 318 feet away when the automobile came to a stop—in other words it assumes the train traveled 100 feet, which would take 1 second, after the driver saw the train and before she got the automobile stopped. Then it points to the plaintiff's evidence that the automobile could have been backed off the track into the clear in 1-½ to 2 seconds, and assumes the shorter time.

On the law, the opinion holds it unnecessary to decide three questions mooted in the briefs: (1) whether the plaintiff and her husband, as guests, were guilty of contributory negligence; (2) whether under two certain Kansas decisions[1] the negligence of the driver-host may be imputed to the plaintiff guests; (3) whether under another Kansas decision[2] there may be more than one proximate cause of an injury. With these questions eliminated, the opinion then proceeds to reverse the cause outright on the sole ground that the plaintiff's evidence failed to make a case for the jury under the Kansas last chance doctrine, because it wholly lacked any proof that the railroad engineer could have slowed the train enough to avert the casualty *after* the plaintiff and her husband became in helpless peril and no longer could extricate themselves.

That conclusion was reached on the factual theory stated in the second preceding paragraph, that the train was only 318 feet away when the automobile came to a stop on the track; that at 102 feet per second the train would span that distance in 2.95 to 3-½ seconds; that during the 1-½ seconds when the driver could have backed the automobile off the track the plaintiff and her husband were not in inextricable peril, and the engineer was not under any last chance duty to act until that period expired; and when the 1-½ seconds was substracted from the 2.95 to 3-½ seconds, only 2 seconds or less remained, and the locomotive was so close to the crossing that it was impossible to avert the casualty.

It seems to me the opinion errs in both its facts and reasoning. On the facts, this court has no right to assume conclusively that it took a second for the driver to slam on the brakes and stop the automobile coupe, which was traveling only 5 or 6 miles per hour with the parties

[1]Buchhein v. A., T. & S. F. Ry. Co., 147 Kan. 192, 195-6, 75 Pac. (2d) 280; Christie v. A., T. & S. F. Ry. Co., 154 Kan. 713, 716, 121 Pac. (2d) 208.
[2]McRae v. Mo. Pac. Ry. Co., 116 Kan. 99, 225 Pac. 1032.

looking for the possible approach of a train. Further, it is an obvious mathematical fact that going 102 feet per second the train would have required slightly over 4 seconds to travel the 418 feet to the crossing from the point where it was first seen by the driver, if its speed had not been checked at all. And the testimony of plaintiff's two experts was that if the emergency brakes had been applied its speed could have been retarded over one-half in that distance, and its travel time correspondingly increased ▮▮▮ about 2 seconds, making the elapsed time about 6 seconds. With the 1-½ seconds self-help time deducted therefrom, 4-½ seconds would have still remained for the engineer to act. At any rate, in those circumstances what right has this court to say as a matter of law that the train could not have been slowed up enough to permit the driver to back off the track in 1-½ seconds as she was attempting to do?

▮ But the main objection is that the opinion imputes to the plaintiff the negligence of the driver of the automobile—notwithstanding it had earlier held there was no need to determine whether that could be done in Kansas under the Buchhein and Christie cases, supra.[1] By necessary effect the opinion does that, because it subtracts the 1-½ seconds in which the negligent driver could have backed the automobile out of danger, from the assumed 3-½ seconds the train would have consumed in reaching the automobile, and as a matter of law exculpates the engine crew because they could not have averted the casualty in the 2 seconds remaining. In other words, the 1-½ seconds of self-help time is credited to the engine crew, and charged against the plaintiff, although the opinion had also earlier stated it was unnecessary to decide whether the plaintiff was guilty of contributory negligence and thereby conceded for the purposes of the opinion that she was not so guilty.

The foregoing reasoning excuses the engine crew's inaction throughout the 1-½ seconds of self-help time, and makes the innocent plaintiff answerable for the driver's negligent failure to act. Under the Kansas last chance doctrine that would have been proper if the doctrine of respondeat superior were applicable to the plaintiff, or if she could have but negligently failed to avert the collision until it was too late for the engine crew to do so. But neither of those premises is true. Being only a guest, the doctrine of respondeat superior did not apply to her; and under her own evidence and the assumption of the opinion she was not negligent.

It is true the Buchhein case from Kansas, supra,[1] denied a plaintiff guest's recovery in an automobile-railroad crossing collision, where it was stated (italics ours) : "the car was never entrapped or in a predicament from which *it* could not extricate *itself*." But in that case other parts of the decision ruled as a matter of law that the plaintiff guest had ample opportunity to warn the driver and negligently failed to do so, whereas here the principal opinion acquits the

plaintiff and her husband of negligence for the purposes of the case. Furthermore, that decision was considered by Division 1 of this court in Trower v. M.-K.-T. Rd. Co., 353 Mo. 757, 764, 184 S. W. (2d) 428, 432(7), and it was said the quoted language appears to have been unnecessary to a decision of the case.

It may well be conceded that the driver of the automobile in the instant case was guilty of contributory negligence, as was ruled in the companion case of Murphy v. A., T. & S. F. Ry. Co., 353 Mo. 697, 183 S. W. (2d) 829. But as held in previous Kansas decisions such as Darrington v. Campbell, 150 Kan. 407, 408-9, 94 Pac. (2d) 305, 306, the negligence of the driver is not imputed to the guest, though the latter is required to watch and warn and otherwise take reasonable precautions for self-protection. Neither will the appellant railroad be excused because of the concurrent third party negligence of the automobile driver. Tilden v. Ash, 145 Kan. 909, 916-7, 67 Pac. (2d) 614, 618(2); Gray v. Kurn, 345 Mo. 1027, 137 S. W. (2d) 558, 566(9).

The Christie case from Kansas cited, supra,[1] was regarded as controlling in a former opinion written in this cause, which was set aside when a rehearing was granted on recommendation of its author. But I cannot see that it is even persuasive, at least under present facts. In that case, as here, the plaintiff was a guest in an automobile, which stopped on a parallel track at a railroad-highway crossing awaiting the passage of a train. While so waiting the automobile was negligently struck by another train. In sustaining a demurrer to the plaintiff's petition, disclosing the above facts, the Kansas Supreme Court held the plaintiff was guilty of ''contributory'' negligence barring her recovery; and that ''the proximate cause of the accident'' was the negligence of the driver of the automobile in stopping on the parallel track.

It was argued to this court on the former hearing of this case that the above language showed the Kansas court regarded the admitted negligence of the train operatives in colliding with the automobile as ''immaterial,'' and meant the plaintiff's negligence contributed with the automobile driver's negligence [not the railroad's] to cause the collision. But numerous Kansas decisions have held the last chance doctrine in that State requires a showing that a negligent defendant had a reasonable opportunity to avert the casualty *after* the *plaintiff's* negligence had ceased—not the negligence of some third party. In both the Buchhein and Christie cases [marginal note 1] the Kansas Supreme Court expressly held the plaintiffs were guilty of contributory negligence as a matter of law. That is not the situation here. The principal opinion for the purposes of this appeal concedes the respondent was not guilty of contributory negligence. Certainly she was not as a matter of law.

In my opinion the statement in the Christie case that the negligence of the driver of the automobile there was ''the proximate cause of the

injury" did not mean that a non-negligent plaintiff guest would be chargeable with the negligence of the driver of an automobile in which he was riding; or that in such circumstances the concurrent negligence of the defendant would be immaterial. Neither can that conclusion be drawn from the statement in the Buchhein case that "the car was never entrapped or in a predicament from which *it* could not extricate itself." For these reasons I dissent.