CLARA VAIL, Respondent, v. GUY A. THOMPSON, Operating Trustee and Receiver of MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Appellant, No. 41660—232 S. W. (2d) 491.

Division One, July 10, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, September 11, 1950.

*Richard H. Beeson, David P. Dabbs* and *Dean F. Arnold* for appellant.

*E. E. Thompson, Eugene R. Brouse* and *Sam Mandell* for respondent; *Popham, Thompson, Popham, Mandell & Trusty* ·of counsel.

HYDE, J.—Action for damages for wrongful death of plaintiff's husband in Kansas. Plaintiff had verdict and judgment for $10,000.00. Defendant has appealed. The principal question is whether plaintiff made a jury case under the Kansas last clear chance rule. On this issue, we will not consider defendant's evidence as there is nothing in it to aid plaintiff.

Plaintiff's husband, William F. Vail, was killed when defendant's passenger train struck his truck on a street crossing in Neodesha, Kansas. The casualty occurred early in the afternoon on a clear day in February 1945. Defendant's main line track ran north and south, along the west side of the town, parallel to Twelfth Street which was on the west side of the track. The main line track was two and a half feet above Twelfth Street and 20 feet east of it. There were two switch tracks east of the main line track. The train was traveling south about 30 miles per hour. The track was downgrade to the south, about 2.75 feet per mile. Vail was driving his truck south on Twelfth Street at a lower rate of speed than the train and, when he reached North Carolina Street, he slowed down, turned east (left) and drove up the incline on to the track, going about 6 to 8 miles per hour. This incline on North Carolina from Twelfth Street to the track was covered with cinders which were soft and deeply rutted. The crossing was rough, rutty and full of chuck holes. It had rained that morning and there was water standing in the ruts and holes. Two witnesses, working on a building about 500 feet away (northwest) across Twelfth Street, saw the truck turn and heard the train whistling. They could not see the train at that time because of a larger building north of them. When the train came into their view, it was between 400 and 500 feet from the crossing. At that time, the truck was on the crossing with its front wheels at or near the east rail.

These witnesses said the truck stopped, or stalled, on the track. They could see Vail moving around inside the cab. He was moving his arms around; he looked down and also looked to the north. "The truck jiggled and moved back and forth a time or two. * * * The truck was sort of rocking * * * jerking." One of these witnesses said he couldn't tell what Vail was doing but "he was messing with something in there." The other witness said he saw Vail turn to the left and move his arms around and that there was a jerking motion of the truck; "part of the time he was looking down and once in a while he would look north." The engine struck about the left door of the truck cab and threw it to the southwest, across Twelfth Street. The truck was a 1939 Chevrolet with left-hand drive.

The train consisted of an engine, tank and seven cars. Plaintiff had testimony of two retired railroad engineers estimating that such a train going 30 miles per hour, could be stopped in 250 to 275 feet. It was actually stopped with the engine 725 feet south of the crossing and the evidence was that the brakes were put on about 75 feet north of the crossing. However, the testimony of plaintiff's experts taken as a whole (considering their estimates on reaction time and reduction of speed in each 100 feet) would not amount to substantial evidence of a total stopping distance of less than 300 feet.

The essential elements of the Kansas last clear chance rule are stated as follows: "(1) Plaintiff, by his negligence, placed himself in a position of danger; (2) that his negligence had ceased; (3) that defendant seeing plaintiff in a position of danger, or by the exercise of due care should have seen him in such position, by exercising due care on his part, had a clear chance to avoid injuring plaintiff; (4) that defendant failed to exercise such due care, and (5) as a result of such failure plaintiff was injured." (Goodman v. Kansas City, M. & S. R. Co., 137 Kan. 508, 21 Pac. (2d) 322; Ross v. Chicago, R. I. & P. R. Co., 165 Kan. 279, 194 Pac. (2d) 491.) There is no question about Vail's negligence in driving on the track with the train whistling and coming toward him in plain view. Therefore, the decisive questions here are: when did Vail's negligence cease? and what could defendant have done thereafter? The burden of proof on these issues is on the plaintiff. (Bollinger v. St. Louis-S. F. R. Co., 334 Mo. 720, 67 S. W. (2d) 985; Murphy v. Atchison, T. & S. F. R. Co., 353 Mo. 697, 183 S. W. (2d) 829; Murphy v. Atchison, T. & S. F. R. Co., 355 Mo. 643, 197 S. W. (2d) 632.) We do not think that plaintiff has sustained this burden herein.

Under the Kansas law, the contributory negligence of an injured person ceases to be a complete defense only when such person is in helpless peril; "that is in a condition of peril from which he cannot by the exercise of reasonable care extricate himself." (Bollinger v. St. Louis-S. F. R. Co., supra; Caylor v. St. Louis-S. F. R. Co., 332 Mo. 851, 59 S. W. (2d) 661; Dyerson v. Union Pacific R. Co., 74 Kan. 528, 87 Pac. 680; Bazzell v. A. T. & S. F. R. Co., 133 Kan. 483, 300 Pac. 1108.) Until his position of peril is such that he cannot escape therefrom by his own efforts, his negligence (in not doing what he could to save himself) is considered to be a continuing concurring cause. (Dyerson v. Union Pacific R. Co., supra; see also Buchhein v. Atchison, T. & S. F. R. Co., 147 Kan. 192, 75 Pac. (2d) 280; Trower v. Missouri-Kansas-Texas R. Co., 347 Mo. 900, 149 S. W. (2d) 792, 353 Mo. 757, 184 S. W. (2d) 428.) Thus the question under the Kansas law is: Did Vail's negligence cease to be effective (as a concurring cause) so as to create a sufficient margin of time thereafter and prior to the collision in ██ which defendant had a fair opportunity, a last clear chance, to prevent the collision?

We think this case is ruled by Jamison v. Atchison, T. & S. F. R. Co., 122 Kan. 305, 252 Pac. 472. In that case, the plaintiff drove an automobile west on to a steep muddy railroad crossing, which caused his rear wheels to spin so that he could make no forward progress. He saw the train coming south toward him about 400 feet away at 30 miles per hour. He then made another effort to get the car across the track but killed the engine and his car was struck. The Court said that plaintiff could have backed the car off or stepped out and that it was bound to hold that his negligence did not cease to operate for a sufficient time prior to the collision to shift the exclusive blame to defendant. The Court said: "Even after plaintiff did discover the train 400 feet away, coming at 30 miles per hour, he still had nine seconds to step from his car and get out of danger. He could and would have come scathless out of his predicament if he had acted upon the most elementary principles of common prudence. At all events, plaintiff completely failed to make out a prima facie case showing that his own negligence had ceased for a sufficient length of time to have permitted the defendant by diligent action to have averted or minimized the accident and injury to plaintiff."

We think the situation here is substantially the same. There was nothing to show that Vail could not have opened the left door of his car (where he was sitting) and stepped out prior to (and even after) the time when the engine reached the point where it was impossible to stop it before it got to the crossing. It was not shown that there was anything wrong with the door. In Murphy v. A. T. & S. F. R. Co., supra, we held that plaintiff did not make a case under the Kansas last clear chance rule because the car could have been backed off the crossing in two and one-half seconds. Vail had more than twice that time to get out even after the engine had passed the point where it could have been stopped short of the crossing. Furthermore, there is nothing in the evidence to show why he could not have backed off the crossing. If his front wheels were not quite to the east rail his rear wheels would have been west of the west rail. We, therefore, cannot hold that he was then in helpless or inextricable peril, as required by the Kansas law before defendant's duty would arise, and so his negligence had not ceased in time for the defendant to have thereafter had a last clear chance to save him.

Plaintiff's theory is that Vail saw the train because he was seen to look north; that the truck was not stalled by killing the motor because it was seen to jiggle and rock back and forth as the train approached; but that it was stalled because of the defective condition of the crossing (ruts and chuck holes); and that this produced an emergency which required rapid action without time to deliberate. Under these circumstances, plaintiff says Vail was not necessarily negligent because he failed to exercise the best judgment and do what

was best to save himself, citing Kansas City-Leavenworth R. Co. v. Langley, 70 Kan. 453, 78 Pac. 858; Leinbach v. Pickwick Greyhound Lines, 135 Kan. 40, 10 Pac. (2d) 33; Hill v. Southern Kansas Stage Lines Co., 143 Kan. 44, 53 Pac. (2d) 923; Eubank v. Kansas City Terminal R. Co., 346 Mo. 436, 142 S. W. (2d) 19. The Langley and Hill cases were not last clear chance cases and the instruction approved in the Leinbach case was not one defining that rule. Moreover, in none of these cases was the injured party guilty of contributory negligence as a matter of law. In the Eubank case, plaintiff, a streetcar operator, drove his car onto the railroad track when defendant's switch engine was standing still. He stopped the car when the switch engine started toward him. There was a last clear chance situation in that case, because the switch engine could have been stopped after the streetcar was stopped on the track. The plaintiff's alleged negligence in that case was not in going on the track but in stopping the streetcar on the track by putting on the brakes, when the switch engine started toward him, instead of going on across. However, when the streetcar stopped, plaintiff was in helpless peril and if the switch engine, which was moving slowly, could thereafter have been stopped, there was a last clear chance case.

Plaintiff's emergency argument might be important in this case if we had to determine as in the Eubank case, whether or not Vail was negligent in going on the track. However, Vail's conduct in going on to this crossing with the train in full view would be contributory negligence as a matter of law in any jurisdiction. The decisive question is: when did his negligence cease? The answer under the Kansas law is: when his peril became inescapable. Under this ruling of the Supreme Court of Kansas in the Jamison case, plaintiff's evidence does not show that Vail's negligence ceased in time for defendant to have thereafter saved him. As in the Jamison case, it must be considered that Vail lived near this crossing, used it frequently and he was very familiar with it. Its condition was not any sudden development and it was not such that he could not have crossed it with due care to use sufficient power. It does not appear to have been as difficult to negotiate as the muddy crossing in the Jamison case. Therefore, even though defendant was negligent in maintaining it, Vail was perhaps also negligent in the way he drove on to it. Anyhow, he unquestionably was negligent in doing so without looking for the train. (Bollinger v. St. Louis-S. F. R. Co., supra.) His negligence continued as a concurring cause, which was a complete defense for defendant under the Kansas law, until his position of peril on the track became helpless and inextricable. Under the Jamison case, that did not happen as long as he could save himself by getting out of the truck. It was only necessary for him to step out the door and off the track. The train would have carried

the truck away from him. Thus plaintiff's evidence at most leaves to speculation and conjecture the matter of whether, after Vail's peril became inescapable, defendant had a clear chance to do anything that could have saved him.

The judgment is reversed. All concur.